PACE, et al. *v.* LAUREL AUTO PARTS, INC., et al.

No. 41373        March 21, 1960        118 So. 2d 871

*Collins & Odom,* Laurel, for appellants.

*Young, Daniel & Coker,* Jackson, for appellee.

ARRINGTON, J.

Mrs. M. W. Pace and her minor daughter filed their claim against the Laurel Auto Parts, Inc., and its insurance carrier for benefits under the Mississippi Workmen's Compensation Law for the death of their husband and father, M. W. Pace. The attorney-referee held that his death was not compensable, and upon petition for review by the full Commission, by a unanimous decision, it was held that his death was compensable. On appeal to the circuit court, the order of the Commission was reversed and the order of the attorney-referee reinstated, and from this judgment the claimants appeal to this Court.

The record in this case discloses that M. W. Pace, the deceased, was approximately 69 years of age; that he was receiving Social Security benefits; that he had been employed since 1954 by the Laurel Auto Parts, Inc., as a night watchman at a salary of $100 per month; that he worked from 6:15 P. M. to 6:15 A. M.; that he lived about six or seven miles from his place of employment; that for sometime after his employment he went to and from work by means of the city bus and the Ellisville-Laurel bus. Sometime later the Laurel City bus was discontinued, and in order to reach the Ellisville- Laurel bus, Mr. Pace used a taxicab, but this proved to be expensive. He discussed the matter with his employer, Mr. George Newcomb, manager and half-owner of the Laurel Auto Parts, Inc., and Mr. Newcomb agreed to furnish transportation for Mr. Pace. Mr. Newcomb testified as an adverse witness for the claimants, and testified that he sent a company-owned pickup truck to bring Mr. Pace to work, and on some occasions he would drive by and pick him up, and at other times, his daughter would bring him to work. At this time he started giving Mr. Pace $3.00 per week, which he termed a gift, but it was to help defray his transportation costs.

The evidence shows that on the morning of December 3, 1957, the deceased, while driving his automobile from his employer's premises to his home, was injured in an automobile accident, from which injury he died on December 9, 1957.

The attorney-referee found as a fact that the deceased was given an additional $3.00 per week in cash to help pay transportation to and from his work, although as aforesaid, he held that his death was not compensable. Upon review, the full Commission found that the employer paid Pace $3.00 per week in cash to help meet the additional cost of transportation due to the termination of the bus service, and "It is manifestly apparent from the record that this $3.00 was paid to the employee for the purpose of transportation. However, the said amount of money was given in cash, whereas, the payment for his regular work was paid by check and shown on the books. No record was made of the $3.00 given to the employee. However, there seems to be no issue relative to such being the case. . ."

The Commission found that since the $3.00 per week was given to Mr. Pace for payment of transportation, his death was compensable. The circuit court, in reversing the decision, held that the giving of the extra money by the employer was a clandestine agreement in order to avoid the Social Security Law; and that the payment to the deceased of the additional money did not make the deceased's going to and from work paid employment in the sense that it was paid travel for the substantial benefit of the employer; that it was no more than any other person's travel to and from work where the service to be rendered is at a fixed place of employment; that th additional money was given in the nature of an increase in pay rather than a payment for the time traveled.

In Wallace v. Copiah Lumber Company, 223 Miss. 90, 77 So. 2d 316, this Court held that an employee who re-

ceived injuries off the premises of the employer while going to or returning from work was not compensable. "However, the general rule is subject to a number of exceptions, such as (1) where the employer furnishes the means of transportation, or remunerates the employee."

In Larson's Workmen's Compensation Law, Volume 1, Section 16.30, it seems to be well settled that where the employer pays the cost of transportation as an inducement for the employee to continue in his employment, the injury or death of the employee while going to and from his work is compensable. See pages 229, 230, and cases there cited.

In the case of Williams v. Travelers Insurance Company of Hartford, (La.) 19 So. 2d 586, the plaintiff's husband was employed as a lumber inspector and was killed in an automobile accident on his return home from a government project on which he had been at work for his employer. The Court said: "There is a second defense based on the grounds that the decedent was not killed while acting in the course and scope of his employment but there is a stipulation in the record to the effect that he was fatally injured in an automobile accident while returning to his residence after having performed his day's work on the job on which he was engaged, approximately 30 miles away. He used his own automobile but it is admitted that he was allowed traveling expenses and this, in our opinion, brought him within the rule that an employee who is injured or killed on his way to or from work, where transportation is a concomitant of the contract of hiring, is considered as having been injured or killed within the course of his employment and a claim arising under such circumstances is compensable."

Larson in commenting upon the case of Katz v. Katz (Conn.), 75 A. 2d 57, states: "Even if the distance is not great, the parties may single it out for separate agreement because of the special circumstances. Thus, when

the laundry at which claimant had worked was moved to the other side of town, he decided to quit work because his weak heart would not permit him to undertake the journey. As an inducement to persuade him to continue, the employer promised to furnish transportation. It was therefore held that, when on one occasion the employer's truck was not available and claimant was hurt while going for a street-car, the employer was liable since the essence of the agreement was that the employer assumed responsibility for the transportation period.'' See Larson's Workmen's Compensation Law, Section 16.30, pages 230, 231.

The author concludes with this statement: ''With this caveat, the general holding that payment for transportation usually extends the course of employment can be taken as well established; but it should be limited to those cases in which it can also be said that the unusual distance to and from work makes the travel a substantial part of the service.'' Page 232.

In 99 C. J. S., Workmen's Compensation, Section 235, it is said: ''It has also been required that the means of transportation be under the control of the employer; but other authorities hold that, while the presence or absence of control is certainly a factor to be considered, it is not decisive. The employee is deemed to be on duty during the transportation, whether the employer supplies the vehicles or compensates the employee for the use of his own.

''This exception to the general rule has been held to be as well established as the rule itself, and to be supported by overwhelming authority. It may arise from the custom or practice on the part of the employer, of furnishing transportation, or from a continued practice which is beneficial, convenient, or advantageous to both employer and employee, even though such practice may not be said to have become part of the contract of employment.''

In Watson v. Grimm, (Md.) 90 A. 2d 180, the Court said: "We have stated that where an employer provides free transportation for his employee, the employee is deemed to be on duty during transportation, whether the employer supplies the vehicle or compensates the employee for the use of his own. Heaps v. Cobb, 185 Md. 372, 384, 45 A. 2d 73. It is held by the overwhelming weight of authority that where the employer agrees to provide transportation for his employee to and from work, compensability of injury sustained during transportation is in no way dependent upon the method of travel employed. Swanson v. Latham & Crane, 92 Conn. 87, 101 A. 492; Lehigh Navigation Coal Co. v. McGonnell, 120 N. J. L. 428, 199 A. 906; City and County of San Francisco v. Industrial Accident Commission, 61 Cal. App. 2d 248, 142 P. 2d 760; Burchfield v. Department of Labor and Industries, 165 Wash. 106, 4 P. 2d 858. As the United States Supreme Court said in Cardillo v. Liberty Mutual Insurance Co., 330 U. S. 469, 67 S. Ct. 801, 809, 91 L. Ed. 1028, where there is an obligation to furnish the transportation, it is irrelevant whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use."

██ ██ Under the facts disclosed by this record, we are of the opinion that the finding of the Workmen's Compensation Commission was supported by substantial evidence and any other finding would have been contrary to the weight of the evidence. In this case, Mr. Pace, the deceased, held a responsible position with his employer, the Laurel Auto Parts, Inc., and he worked twelve hours every night. Over the year his compensation amounted to a little more than twenty-five cents an hour. Certainly the employer was interested in him continuing

his duties as a night watchman and readily agreed to pay his transportation. As was said in the Katz case, supra, it may well have been that if the employer had not agreed to pay the transportation the deceased would not have continued in his employment. Although we do not know, we are of the opinion that the transportation money furnished the deceased did not violate the Social Security law, however, if it should, this is immaterial insofar as the Workmen's Compensation Law is concerned.

We are of the opinion that the circuit court erred in reversing the order of the Commission and in reinstating the order of the attorney-referee. The finding of the Commission was supported by substantial evidence and under a long list of decisions of this Court, as well as courts of other jurisdictions, we would not be warranted in setting it aside. It follows that the judgment of the circuit court is reversed and the finding of the Commission is reinstated and affirmed.

Reversed and remanded.

All Justices concur, except *Roberds, J.*, who took no part.