371 So.2d 864 (1979)
WESTERN ELECTRIC, INC.
v.
BETTY Ann FERGUSON and minor dependents of Chester Ray Ferguson.
No. 51082.
Supreme Court of Mississippi.
June 6, 1979.
*865 Butler, Snow, O'Mara, Stevens & Cannada, Dan McCullen, Jackson, for appellant.
Crawley & Ford, Michael H. Steele, Kosciusko, for appellees.
Before SMITH, SUGG and COFER, JJ.
SUGG, Justice, for the Court:
This Workmen's Compensation case involves two questions (1) Did Chester Ray Ferguson meet his death under conditions constituting an exception to the going and coming rule? (2) If Ferguson's death is compensable, was the employer entitled to credit for the sum paid his dependents under the company's pension and disability plan?
The administrative judge ruled that Ferguson's death arose out of and in the course of his employment and ordered Western Electric, Inc. to pay death benefits to claimants without allowing credit for the year's salary paid under the disability and pension plan of Western Electric. The full Commission reversed the order of the administrative judge holding that Ferguson was not a traveling employee, he was not being paid travel expense by the employer at the time of his death, and his death did not arise out of and in the course of his employment. On appeal to the Circuit Court of Winston County the order of the Commission was reversed and the order of the administrative judge was reinstated. Western Electric appealed.

I

DID FERGUSON MEET HIS DEATH UNDER CONDITIONS CONSTITUTING AN EXCEPTION TO THE GOING AND COMING RULE?
Chester Ray Ferguson was employed by Western Electric for fourteen years as an installer for Western Electric. At the time of his death, Ferguson's base location was Meridian. The Meridian territory for Western Electric covered most of the east central portion of Mississippi. Although Ferguson's designated base location was Meridian, he elected to reside with his family in Ethel. Before January 16, 1976, Ferguson had been temporarily transferred to Macon to complete an installation project for South Central Bell Telephone Company. After completing his day's work at 4:15 p.m. on January 16, Ferguson traveled in his privately owned motor vehicle from Macon toward his home when he was involved in a collision which resulted in his death.
Although Ferguson resided at Ethel, his base location was Meridian and he commuted to Meridian in his own vehicle at his expense. As an installer, Ferguson's duty was to install telephone central office equipment wherever assigned by his employer. Western Electric was engaged in a *866 contract installation for South Central Bell Telephone Company at Macon which commenced December 8, 1975, with an estimated completion date of April 18, 1976. Ferguson was transferred on temporary assignment to Macon on December 22, 1975, to Louisville on January 8, 1976, and on January 14, was transferred back to Macon. While working on temporary transfers his work schedule was from 7:30 a.m. to 4:15 p.m. with a 45 minute lunch period. Following the completion of his day's work at 4:15 p.m. he did not have any responsibility as far as service for Western Electric and was free to do whatever he wanted to until 7:30 a.m. the next day, unless called out on an emergency.
During the year 1975, Ferguson was assigned duties at his base location in Meridian for six months and seven days. During the remaining portion of the year he was on temporary transfer to Durant, Kosciusko, Starkville, Forest, Macon and Louisville. Before his death in 1976, Ferguson was not assigned any duties in Meridian, but was on temporary assignment. When Ferguson was initially transferred on each temporary assignment, he was allowed 13¢ per mile to cover travel expense on the initial transfer and an additional 13¢ per mile when reassigned to another location.
Section 1.10 of the CWA Installation Contract defines a temporary transfer as the transfer of an employee from one work location to another work location without a change in the employee's base location. Section 4.31 of the contract provided for per diem allowances for employees working on temporary transfer. The amount of the daily allowance was based on the distance between the base location and the place of the temporary assignment. At the time Ferguson was killed the per diem allowance was as follows: Up to 50 road miles  $10.25; 50 up to 150 road miles  $15.50; 150 road miles and over  $22.50.
The manner in which Ferguson spent the per diem allowance was not restricted by Western Electric. Although he was paid a per diem allowance for 7 days each week while on temporary transfer, he only worked 5 days per week. Ferguson returned to his home at the end of each work day where he spent the time with his wife and children. Ferguson was subject to numerous transfers during the course of his employment with Western Electric having been transferred nine times in 1975 and two times in 1976 before his death on January 16. While Ferguson's hours of employment were regular and his place of employment was fixed while on temporary assignment, traveling was a substantial part of his employment responsibility. Western Electric contends that the per diem paid Ferguson was not reimbursement for travel expenses, but only for board, lodging and laundry while on temporary transfer. This is an unrealistic view because the per diem allowance was based on the distance from Ferguson's base location to the place of his temporary assignment, and this payment was at least in part in the nature of a travel allowance.
Western Electric argues that Ferguson's death is not compensable because: (1) he was not being paid travel expenses on the date of his death, (2) he was traveling to his home in his privately owned vehicle after working hours, (3) he was not on his employer's premises or on his employer's business when he was killed, (4) his travel did not come within one of the exceptions to the going and coming rule.
In support of its argument, Western Electric relies on Edward Hyman Co. v. Rutter, 241 Miss. 301, 130 So.2d 574 (1961) and Phillips Contracting Co. v. Adair, 245 Miss. 365, 148 So.2d 189 (1963) where compensation was not allowed for the death of employees under the going and coming rule. The facts in these cases are distinguishable.
In Phillips, the deceased employee was paid by the hour, he was not reimbursed for travel expenses, and his use of the employer's vehicle in making a mid-week visit to his home was contrary to company policy.
In the Hyman case, Rutter was employed as plant manager for Hyman Company at Prentiss. On January 1, 1959, Rutter lived in Covington, Louisiana where he owned a home in which he resided with his wife and *867 two children. The children were attending school in Covington and Rutter's wife was expecting another child in April, 1959. Rutter was paid a salary of $200 per week and $100 per month for living expenses while he remained in Prentiss during the week. Rutter was paid 8¢ per mile for use of his automobile while traveling on company business. The company was reluctant to hire a manager who did not live in Prentiss, but agreed that claimant's family could stay in Covington until the school year ended. Rutter was required to reside in Prentiss during the work week and the $100 per month living expenses was for his living expenses in Prentiss.
Instead of residing in Prentiss, however, and unknown to his employer, Rutter commuted daily to Covington to stay with his family. He was injured in an automobile wreck while enroute from Prentiss to his home and contended that his per diem expense made his travel work connected and therefore compensable. We held that the facts did not bring Rutter within any of the exceptions of the going and coming rule.
The facts in Hyman are unlike the facts in Ferguson because Rutter was required to live in Prentiss, but commuted home daily contrary to company policy. In our case, Ferguson was not required to live in Macon and his per diem allowance was based at least in part on mileage between his base location and the site of his temporary assignment. We can discern no reason for paying Ferguson a per diem allowance of different amounts based entirely on the distance between his base location and the place of his temporary transfer unless the allowance was based in part on the expectation that it would be used to defray travel expense to Ferguson's home when he was not on duty.
In Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965), we stated:
This Court is firmly committed to the general rule that the hazards encountered by employees while going to or returning from their regular place of work and off the employer's premises are not incident to employment and accidents arising therefrom are not compensable. Wallace v. Copiah County Lumber Company, 223 Miss. 90, 77 So.2d 316 (1955); Dunn, Mississippi Workmen's Compensation § 103 (1957). And an employee who claims an exception to this general rule has the burden of proving that he comes within one of the exceptions. Edward Hyman Co. v. Rutter, 241 Miss. 301, 130 So.2d 574 (1961). (252 Miss. at 858, 174 So.2d at 497).
In Pace v. Laurel Auto Parts Co., Inc., 238 Miss. 421, 118 So.2d 871 (1960), we held that an exception to the general rule arises when the employer furnishes the means of transportation or remunerates the employee to help defray his transportation cost. The employee in that case was given $3 per week in cash to help pay transportation to and from his work. The accident occurred when the employee was using his own vehicle from the employer's premises to his home and compensation was allowed.
Compensation was allowed by the New York Supreme Court in a case where the facts are very similar to our case. Fisher v. Otis Elevator Co., 28 A.D.2d 598, 279 N.Y.S.2d 769 (1967). In Fisher a construction worker was employed at a job site about 78 miles from his home in Syracuse, New York. Under the union agreement he was paid mileage for his original trip to the job site and on his final trip home after completion of the project, plus an additional per diem allowance of $7.50 per day. The New York Court held that the death of the worker in an automobile accident while returning home for a visit, arose out of and in the course of his employment, and stated:
The manner in which the employee spent the per diem allowance was not restricted by the employer. Although claimant was paid a per diem allowance for a seven-day week, he and the other employees worked but five days per week. At the end of a work week, he returned to his home in Syracuse on Friday, May 28, and was not expected to return until Monday. He spent the weekend visiting his children and upon his return to the job site he was killed in an automobile accident.

*868 The record clearly establishes that there were no restrictions on the use of the $7.50 allowance and that the employer knew, expected and impliedly acquiesced in the practice of periodic trips home made by such employees. There was substantial evidence to sustain the board's finding that this payment was at least in part in the nature of a travel allowance. (279 N.Y.S.2d at 770).
We find the reasoning of the New York Court persuasive. The facts in our case are not in dispute, and show that the per diem allowance paid Ferguson was, at least in part, in the nature of a travel allowance. We hold that the Commission erred as a matter of law when it reversed the administrative judge and held that Ferguson's death was not compensable.

II

IS THE EMPLOYER ENTITLED TO CREDIT FOR THE SUMS PAID FERGUSON'S DEPENDENTS UNDER ITS PENSION AND DISABILITY PLAN?
Western Electric contends that if it is determined that Ferguson's death is compensable, then it is entitled to a credit of $14,428.08 paid by it under its plan for employee's pension, disability benefits and death benefits. Western Electric is a self insurer under the Mississippi Workmen's Compensation Act, and also afforded its employees sickness benefits, disability benefits, accidental death benefits, and pension benefits in accord with a pension plan funded solely by Western Electric. Section 8, paragraph 27 of the plan provides in part:
In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan; . .
The pension plan was designed to provide a continuity of income to the employee or his dependents in the event of disability or death. Paragraph 27 was designed to prevent duplicate payments for the same injury or death.
While we do not have any Mississippi cases involving credit for death benefits paid by employers, we held in Koestler's Bakery, Inc. v. Boland, 299 So.2d 205 (Miss. 1974) and in Taylor Construction Co. v. Harlow, 269 So.2d 337 (Miss. 1972), that payment of claimant's salary under the facts in those cases would be considered as having been made in lieu of, and as having included, the compensation payments, and credit should have been allowed for the payments.[1]
Western Electric, through its pension plan, affords immediate continuity of income to an injured employee or to his dependents in the case of his death. Employers who willingly adopt this practice should be commended and encouraged rather than penalized. Employers should be permitted to claim the benefits of payments made voluntarily. To refuse credit would inevitably cause employers to be less generous.
If Western Electric cannot receive credit for the death benefits paid to the dependents of Ferguson in this case, it will result in employees or their dependents being penalized because employers would seek a determination of compensability in order to avoid double payments for the same injury or death.
Appellee responds to the argument of Western Electric by stating that a decision of this question is premature and would require this Court to make a decision on a matter that was neither dealt with nor *869 developed fully below. We note that Western Electric in its answer to the motion to controvert raised the question before the administrative judge who denied credit for the death benefits paid by Western Electric.
Appellee also responds by stating:
In addition, Western Electric's argument on this point completely ignores the role that a labor union might play in forcing, through arms-length bargaining, the provisions of such benefits as are provided in the Western Electric employees' pension disability and death benefits plan. The plan was one hammered out in the open marketplace between a corporation and a union and Mrs. Ferguson respectfully submits that it would be beyond the scope of the record, the issues, the facts to issue a decision on this point raised by the appellant.
This argument is not persuasive because in Koestler's Bakery, Inc. and Taylor Construction Co., supra, we considered the matter of credits when employers had made payments to injured employees. Further, Section 8, paragraph 27 of the disability and pension plan of Western Electric prevents duplicate payments for the same injury or death.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED TO THE WORKMEN'S COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE and COFER, JJ., concur.
BOWLING, J., took no part.
NOTES
[1] See the following cases in other states allowing credit for payments to employees. Cowan v. Southwestern Bell Telephone Company, 529 S.W.2d 485 (Mo. 1975); Strohmeyer v. Southwestern Bell Telephone Company, 396 S.W.2d 1 (Mo. 1965); Poole v. E.I. DuPont DeNemours & Co., 227 S.C. 232, 87 S.E.2d 640 (1955); Sharp v. Esso Standard Oil Co., 72 So.2d 601 (La. App. 1954); Lion Oil Company v. Reeves, 254 S.W.2d 450 (Ark. 1952).