# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-WC-00495-COA

DIXIE PRODUCTS COMPANY, INC.                                    APPELLANT

v.

ROY F. DILLARD                                                    APPELLEE

DATE OF JUDGMENT:            02/19/1999
TRIAL JUDGE:                HON. FRANK A. RUSSELL
COURT FROM WHICH APPEALED:  PONTOTOC COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     PHILLIP L. TUTOR
ATTORNEYS FOR APPELLEE:     T. K. MOFFETT
                            J. MARK SHELTON
NATURE OF THE CASE:         CIVIL - WORKERS' COMPENSATION
TRIAL COURT DISPOSITION:    COMMISSION'S AWARD OF BENEFITS AFFIRMED.
DISPOSITION:                AFFIRMED - 03/28/2000
MOTION FOR REHEARING FILED: 4/12/2000; denied 7/18/2000
CERTIORARI FILED:           8/16/2000; denied 11/2/2000
MANDATE ISSUED:             11/27/2000

BEFORE SOUTHWICK, P.J., BRIDGES, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

### PROCEDURAL POSTURE AND ISSUES PRESENTED

¶1. This case is before the Court challenging the judgment of the administrative law judge, the Workers' Compensation Commission, and the circuit court awarding Dillard benefits. Aggrieved by the benefits awarded to Dillard, Dixie Products perfected this appeal raising the following three issues for our review:

> **WHETHER THE ADMINISTRATIVE LAW JUDGE, WORKERS' COMPENSATION COMMISSION, AND PONTOTOC COUNTY CIRCUIT COURT ERRED IN FINDING THAT DILLARD SUFFERED INJURIES ARISING OUT OF AND IN THE COURSE OF HIS EMPLOYMENT WITH DIXIE PRODUCTS, INCORPORATED.**

> **WHETHER THE ADMINISTRATIVE LAW JUDGE, WORKERS' COMPENSATION COMMISSION, AND PONTOTOC COUNTY CIRCUIT COURT ERRED BY DECIDING THAT DILLARD WAS AN EMPLOYEE OF DIXIE PRODUCTS, INCORPORATED AT THE TIME OF HIS INJURIES, OR ALTERNATIVELY, THAT HE WAS A LOANED SERVANT TO SHEA JARRETT.**

> **WHETHER THE DECISION OF THE ADMINISTRATIVE LAW JUDGE, THE**

**WORKERS' COMPENSATION COMMISSION, AND THE PONTOTOC COUNTY CIRCUIT COURT IS CONTRARY TO LAW, IS ERRONEOUS, AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

After reviewing the record and applicable law, we find no error. Accordingly, the award of benefits to Dillard is affirmed.

## FACTS

¶2. Roy F. Dillard was an employee of Dixie Products, an employer uninsured for workers' compensation.[1] On February 7, 1995, Dillard was injured in an automobile accident. At the time of the accident, he was employed by the appellant corporation, jointly owned by, among others, Shea Jarrett and Larry Jarrett. The family also owned other business ventures, including a bedding sales outlet, self-service car washes, and a laundromat, although Shea Jarrett and Larry Jarrett were not record corporate owners in all the ventures. Dillard, through his work with Dixie Products, worked for Ecru Laundromat, which was solely owned by Shea Jarrett. Dillard also worked at two car washes owned by Larry Jarrett. The bedding sales outlet was housed in the same building as Dixie Products.

¶3. At the time of accident, Dillard was returning from having opened the laundromat and was enroute to his home to drink coffee before clocking in at Dixie Products at 7:00 a.m. The van Dillard drove that day was owned solely by Shea Jarrett, individually, but was used by Dillard regularly in his employment with Dixie Products. Larry Jarrett corroborated this fact. Larry Jarrett admitted to paying Dillard out of the petty cash funds of Dixie Products for his work at the laundromat but maintained that the money was always replaced with funds from the laundromat. According to Larry, the petty cash fund of Dixie Products was available for his, Shea's, and Dixie Products's use and benefit. Later, according to Larry, this practice stopped because of control and accounting problems that developed. Larry testified that Dillard did use the van in question to make deliveries for Dixie Products and to travel to the laundromat to get coins to bring back to the secretary of Dixie Products. Larry Jarrett testified that while Dillard was in the employ of Dixie Products, Dillard did whatever he was asked to do whether personal, for the laundromat, the car washes, Dixie Products, or other tasks.

¶4. Shea Jarrett testified that the van was purchased initially to move equipment and supplies for the building of the laundromat. After the laundromat was completed, according to Shea, the van was used for Dillard's travels for Dixie Products, the car washes, the laundromat, and anywhere Dillard needed to go. Shea stated that had Dillard not worked for Dixie Products, he would not have approached him about working for the laundromat. Shea testified that Dillard would sometimes leave his work at Dixie Products, without clocking out, and go to the laundromat to complete work assignments there.

¶5. Dillard maintains that the van he was driving was used by other employees of Dixie Products for corporate endeavors. Dillard testified that Shea told him that Larry purchased the van from Shea. Dillard says he would often work at the laudrodmat owned by Shea Jarrett during his regular working hours with Dixie Products without clocking out and was paid from the petty cash funds of Dixie Products for his work for the Ecru Laundromat. According to Dillard, the coins he collected from the laundromat were counted and rolled by an employee of Dixie Products during her regular working hours. Dillard would leave early in the morning before going to Dixie Products and open the laundromat. Dillard would then report to Dixie Products. However, prior to the morning of the accident, Dillard had been instructed by Larry Jarrett not to clock-in at Dixie Products before 7 a.m. Thus, Dillard had gone to open the laundromat and was returning

home pursuant to Larry Jarrett's order, until he could clock-in at Dixie Products.

## DISCUSSION AND ANALYSIS

**WHETHER DILLARD'S INJURIES AROSE OUT OF AND IN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH DIXIE PRODUCTS.**

**WHETHER THE ADMINISTRATIVE LAW JUDGE, WORKERS' COMPENSATION COMMISSION, AND PONTOTOC COUNTY CIRCUIT COURT ERRED BY DECIDING THAT DILLARD WAS AN EMPLOYEE OF DIXIE PRODUCTS AT THE TIME OF HIS INJURIES, OR ALTERNATIVELY, THAT HE WAS A LOANED SERVANT TO SHEA JARRETT.**

¶6. Dixie Products's first two assignments of error maintain that the administrative law judge, the Full Commission, and the Pontotoc County Circuit Court erred in determining that Dillard was injured during the course of his employment with Dixie Products. Dixie Products relies on the "going and coming rule," which bars worker's compensation recovery if an employee is injured while "going and coming" to and from the employment site. *Wallace v. Copiah Lumber. Co.*, 223 Miss. 90, 99, 77 So. 2d 316, 318 (1955). However, an exception applies where the employer provides transportation or costs thereof for the employee. *Id.* See also *Green v. Glen Oaks Nursing Ctr.*, 722 So. 2d 147, 150 (Miss. Ct. App. 1998); *Stepney v. Ingalls Shipbuilding Div., Litton Sys., Inc.*, 416 So. 2d 963, 964 (Miss. 1982); and, *Pace v. Laurel Auto Parts*, 238 Miss. 421, 426, 118 So. 2d 871, 873 (1960). Alternatively, Dixie Products maintains that if Dillard was an employee of Dixie Products, then he was a loaned servant to Shea Jarrett. Further, Dixie Products maintains that since the van driven by Dillard was owned individually by Shea Jarrett, then it was not Dixie Products's property and thus not a corporate vehicle.

¶7. We find Dixie Products's arguments unpersuasive. As the testimony established, while it appears that there were individual companies, there was commingling of Dixie Products's and Ecru Laundromat's corporate resources. Both Larry Jarrett and Shea Jarrett had some, even if limited, interest in Dixie Products and the laundromat. Employees of Dixie Products, specifically Dillard, did work for Shea's laundromat business and for Dixie Products while on the clock for Dixie Products. The van driven by Dillard on the morning of the accident was used in the operations of both Dixie Products and Ecru Laundromat.

¶8. While he was not on the clock for Dixie Products at the time of the accident, Dillard was performing a routine duty of opening Ecru Laundromat that was a part of his employment with Dixie Products. The fact that Dillard often would do work for the laundromat during his regular working hours for Dixie Products supports his claim that it was in the course and scope of his employment with Dixie Products.

¶9. We find the "going and coming" rule to be inapplicable in the case *sub judice*. We find that the fact that the van in which Dillard was injured was titled solely in Shea's name is inconsequential since the vehicle was admittedly used by Dillard to work both at the laundromat and Dixie Products and other family business ventures. Dixie Products provided Dillard's transportation to and from his Dixie Products work. The laundromat work was interrelated with his Dixie Products employment. Accordingly, the transportation exception applies. *Id*.

¶10. This case is analogous to another recent decision of this Court where two business ventures combined

capital and human resources in furtherance of both entities. In *Liberty Mutual Ins. Co. v. Holliman, et al.*, we found in analyzing two corporations from a management, purpose, operation, supervision, and ownership perspective that they were one in the same. *Liberty Mutual Ins. Co. v. Holliman, et al.*, 1998-WC-01750-COA (Miss. Ct. App. Feb. 22, 2000). Applying a similar analysis here, Dixie Products, Ecru Laundromat, and the other family corporate ventures involved were basically managed by the same people, capital resources were commingled for the benefit of all the ventures, Dillard's labors were used in Dixie Products and Ecru Laundromat, as well as the other ventures, and management was shared between Larry Jarrett and Shea Jarrett. This assignment of error is overruled.

### WHETHER THE DECISION OF THE ADMINISTRATIVE LAW JUDGE, COMMISSION, AND CIRCUIT COURT IS ERRONEOUS, CONTRARY TO LAW, AND NOT SUPPORTED BY THE SUBSTANTIAL EVIDENCE.

¶11. Finally, Dixie Products maintains that the judgment below awarding Dillard benefits is erroneous and not supported by the substantial evidence. The administrative law judge found, pursuant to stipulation, that Dillard's average weekly wage was $291. Further, the administrative law judge found that Dillard suffered a compensable injury during the course and scope of his employment with Dixie Products, and that Dillard was temporarily totally disabled beginning February 5, 1995. Dillard was ordered to receive temporary total disability benefits in the amount of $194.97 per week beginning February 7, 1995, until further order of the Commission. In addition, Dixie Products was ordered to pay Dillard's reasonable and necessary medical expenses from the date of the injury consistent with charges for similar treatment in the community as well as consistent with the Commission's cost containment schedule. Finally, the administrative law judge assessed the mandatory ten percent penalty against Dixie Products in favor of Dillard for all payments not timely made to him. The mandatory penalty is calculated from the time each payment becomes due.

¶12. Of course, this Court's standard of review with regard to administrative decisions is sorely limited. It is well settled that "[t]he Commission is the ultimate fact finder." *Hardin's Bakeries v. Dependent of Harrell*, 566 So. 2d 1261, 1264 (Miss. 1990). "Accordingly, the Commission may accept or reject an administrative judge's findings." *Id.* In the case *sub judice*, the Mississippi Workers' Compensation Commission affirmed the order of the administrative law judge after thoroughly studying the record and the applicable law. The circuit court left undisturbed the Commission's work.

¶13. After reviewing the record, we are satisfied that the judgment below is sound. The testimony of the Jarretts and Dillard established that there was no significant division of Dillard's duties between the Dixie Products and Shea's laundromat business. Accordingly, given our limited standard of review, we cannot substitute our judgment for that of the Commission which is the ultimate fact finder. This assignment of error is overruled.

### CONCLUSION

¶14. Based on the record before us, we find that the decisions of the administrative law judge, Workers' Compensation Commission, and the Pontotoc County Circuit Court are based on sufficient evidence and applicable legal precedents. While Larry Jarrett testified that attempts were made to separate the various business ventures involved in the case *sub judice*, the record demonstrates that such attempts, at least for a division of personnel, were largely unsuccessful. Dillard was acting in the course and scope of his employment with Dixie Products at the time of his injuries. The initial compensation awarded Dillard by the Commission is appropriate.

**¶15. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.**

**KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.**

1. Dixie Products initially sought dismissal of Dillard's claim because of the company's contention that it was exempt from the Workers' Compensation Act pursuant to Miss. Code Ann. § 71-3-5 (Rev. 1995). The administrative law judge conducted a hearing with regard to Dixie Products's exemption claim and determined that the company was subject to the provisions of the Act. The exemption issue was not appealed.