ROBERTS, J.,
for the Court:
¶ 1. Larry Jarrett appeals the judgment of the Pontotoc County Circuit Court finding him individually liable for damages that Roy F. Dillard (Dillard) received incident to a previous'workers’ compensation claim against Dixie Products Company, which was owned by Jarrett and his children. Jarrett appeals and claims that the circuit court should have found that the claim of Dillard’s estate (the Estate) was untimely, and the doctrine of res judicata precluded the Estate from raising that claim, because Dillard failed to raise that issue during Dillard’s initial lawsuit before the Mississippi Workers’ Compensation Commission (the Commission). After careful consideration, we find that the circuit court erred when it declined to find that the Estate’s claim was barred by the doctrine of res judicata. Additionally, we find that the Estate’s claim was barred by the statute of limitations. Accordingly, we reverse the circuit court’s judgment and render a judgment for Jarrett.
FACTS AND PROCEDURAL HISTORY
¶ 2. During June 1997, the Commission held that Dillard suffered a compensable injury and awarded him approximately $200 per week in temporary total disability benefits until further order. The Commission also ordered Dixie Products to pay for Dillard’s medical bills, to the extent that they resulted from his injury. This Court affirmed the Commission’s judgment in Dixie Products Co. v. Dillard, 770 So.2d 965, 967 (¶ 1) (Miss.Ct.App.2000). The mandate issued on November 27, 2000.
¶ 3. Three days after the mandate issued, one of Dillard’s attorneys filed a lis pendens notice regarding several parcels of real property that Jarrett owned. Dixie Products did not own any of the property listed in the lis pendens notice. However, Dillard’s attorney released the lis pendens notice during February 2001. Dillard’s attorney sent Jarrett a letter notifying him of the release. Within that letter, Dillard’s attorney told Jarrett that “[w]e have also requested [that] the Commission ... enter *1210 a judgment against you personally since you failed to maintain [w]orker[s’] Compensation insurance.”
¶ 4. In June 2001, Dillard’s other attorney sent a letter to the administrative judge (AJ). The letter stated that there were a number of unresolved issues , remaining in Dillard’s workers’ compensation claim. According to Dillard’s attorney, one of the remaining issues was:
Whether [Dillard’s] award should be against [Dixie Products] solely or should be against [Jarrett] since [he] failed to maintain worker[s’] compensation insurance and since, upon information and belief, [the assets of Dixie Products are] grossly insufficient to satisfy any claim, [Dixie Products] has been depleted of all assets, and [it] is no longer in operation.
¶ 5. Dillard died on June 10, 2005.[1] At that time, the AJ had not conducted a hearing on the unresolved issues in Dillard’s workers’ compensation case. Approximately two months after Dillard died, his son, Robert Dillard (Robert), opened the Estate. Robert was subsequently appointed as the executor of Dillard’s will.
¶ 6. Later, the AJ heard the remaining issues in Dillard’s workers’ compensation claim.[2] The AJ entered an opinion on April 11, 2007. The AJ'stated that “benefits have continued to be paid,” but the AJ did not specify how much Dillard had been paid. The AJ further stated that Dillard “is entitled to receive and has been receiving permanent total disability benefits.”[3] Finally, the AJ held that Dillard was entitled to expenses associated with reasonable and necessary medical treatments for his work-related injury, and penalties and interest for any past-due payments.
¶ 7. Ten months later, the AJ entered an amended order. It is unclear what prompted the AJ’s amended order. In any event, the AJ held that Dillard was entitled to approximately $125,000 in permanent total disability benefits, ten percent interest in past-due installments, and total benefits of approximately $136,400. No one appealed the AJ’s judgment.
¶ 8. On June 18, 2009, the Estate filed a complaint on behalf of the estate against Jarrett and Dixie Products in the circuit court. The Estate claimed that Dixie Products “was required to carry worker[s’] compensation insurance at all times and [it] failed to do so. Therefore, [Jarrett] is personally liable for the judgment rendered in the worker[s’] compensation claim.” Jarrett filed an answer. Among other things, Jarrett argued that the Estate’s claim was barred by the statute of limitations and the doctrine of rés judicata.
¶ 9. Later, the Estate filed a motion for a judgment on the pleadings or, alternatively, for summary judgment. The Estate argued that it was entitled to summary judgment against Jarrett in his individual capacity because he had been the president and secretary of Dixie Products, and it did not have workers’ compensation insurance at the time of Dillard’s injury. The Estate also argued that the “individual claim against ... Jarrett is wholly unrelated to” Dillard’s previous claim for workers’ compensation benefits.
*1211 ¶ 10. In September 2010, the circuit court granted the Estate’s motion for summary judgment in part. Specifically, the circuit court held that summary judgment was appropriate against Dixie Products, and the judgment against it should be enrolled. However, the circuit court denied Robert’s motion for summary judgment as it pertained to Jarrett’s individual liability.
¶ 11. During August 2012, the Estate filed a renewed motion for summary judgment. Essentially, the Estate reiterated its argument that it was entitled to summary judgment against Jarrett in his individual capacity. The circuit court heard the Estate’s renewed motion for summary judgment on October 23, 2012. The Estate again claimed that there were no genuine issues of material fact regarding Jarrett’s individual liability. Jarrett argued that the Estate’s claim was barred by the statute of limitations and the doctrine of res judicata. Jarrett’s reasoning was based on the fact that, during 2001, Dillard had informed the AJ that Jarrett’s individual liability was an issue, but Dillard failed to obtain a ruling on it. Ultimately, the circuit court granted the Estate’s renewed motion for summary judgment, and entered a judgment of approximately $223,000 against Jarrett and Dixie Products “jointly and individually.” Jarrett appeals.
STANDARD OF REVIEW
¶ 12. An appellate court conducts a de novo review of a trial court’s decision to grant a motion for summary judgment. Kilhullen v. Kansas City S. Ry., 8 So.3d 168, 174 (¶ 14) (Miss.2009). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We must review the evidence in the light most favorable to the nonmoving party. Kilhullen, 8 So.3d at 174 (¶ 14).
¶ 13. To overcome a motion for summary judgment, the nonmoving party “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). The Mississippi Supreme Court has recently held:
[I]n a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non[ Jmoving party has failed to make a. showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.
Karpinsky v. Am. Nat’l Ins. Co., 109 So.3d 84, 88-89 (¶ 11) (Miss.2013) (internal citations and quotation marks omitted).
ANALYSIS
I. RES JUDICATA
¶ 14. Jarrett claims that the circuit court erred when it found that the Estate’s claim was not barred by the doc *1212 trine of res judicata. “Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.” Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In other words, res judicata precludes parties from litigating claims that “were made or should have been made” in a prior lawsuit. Anderson v. LaVere, 895 So.2d 828, 882 (¶ 10) (Miss.2004). The supreme court has held:
Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. If these four identities are present, the parties will be prevented from relitigat-ing all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit. In other words, the doctrine of res judicata bars litigation in a second lawsuit on the same cause of action of all grounds for, or defenses to, recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding.
Id. at 832-33 (¶ 10) (internal citations and quotation marks omitted).

1. Identity of the Subject Matter

¶ 15. In the context of res judica-ta, the subject matter at issue has been characterized as the “substance” of the lawsuit. Hill v. Carroll Cnty., 17 So.3d 1081, 1085 (¶ 12) (Miss.2009). The substance of Dillard’s lawsuit before the Commission was the injury he sustained at work, and the compensability of his injury. During Dillard’s claim before the Commission, Dillard argued that Jarrett should personally have to pay Dillard’s benefits. The substance of the Estate’s lawsuit is exactly the same.

2. Identity of the Cause of Action

¶ 16. A “cause of action” has been defined “as the underlying facts and circumstances upon which a claim has been brought.” Id. at (¶ 13). The term “claim” can be substituted for “cause of action.” See M.R.C.P. 2 cmt.; Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 233 (¶ 27) (Miss.2005). “In order for res judicata and the ban on claim-splitting to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated.” Harrison, 891 So.2d at 234 (¶ 31). The present litigation involves the same claim and the same body of operative facts that had previously been adjudicated.
¶ 17. The dissent would find that the cause of action involved in Dillard’s 1996 lawsuit is different than the Estate’s 2009 lawsuit. According to the dissent, the Estate’s 2009 lawsuit was merely an action to enforce Dillard’s judgment, despite the fact that the Estate sought to enforce a judgment against Jarrett. But Dillard had neither named Jarrett as a defendant to the ,1996 lawsuit, nor obtained a judgment against him. The Estate could not enforce a judgment against Jarrett when the Commission had never entered a judgment against him. Therefore, the Estate’s 2009 lawsuit against Jarrett was an action to obtain a judgment against him, rather than an action solely to enforce a judgment against him.
¶ 18. Additionally, the Workers’ Compensation Act provides a mechanism for the enforcement of a judgment obtained from the Commission through Mississippi Code Annotated section 71-3-49 (Rev. *1213 2011), which is titled as “[ejnforcement of payment in default.” The Estate sought relief through Mississippi Code Annotated section 71-3-83(1) (Rev.2011). Section 71-3-83(1) provides that the “president, secretary[,] and treasurer” of a corporation that is obligated to have workers’ compensation insurance “shall be severally personally liable, jointly with [the] corporation,” for any workers’ compensation benefits that accrue while the corporation does not have the necessary coverage.
¶ 19. Notably, section 71-3-83(1) does not state that a claimant must obtain a judgment against a defendant corporation before he may assert that the president, secretary, and treasurer of the corporation should be personally liable for the benefits that the claimant seeks. In other words, a claimant may assert that he is entitled to relief under section 71-3-83(1) before an AJ awards him a judgment for benefits against his employer.
¶ 20. Dillard’s attorneys clearly sought a judgment against Jarrett in his individual capacity during the previous litigation. During 2001, Dillard’s attorney informed the AJ that Jarrett’s personal liability was an issue that needed to be resolved. Even so, Dillard did not obtain a ruling on Jarrett’s personal liability. Years later, the Estate again raised the issue of Jarrett’s personal liability. Therefore, we find that the identity of the “cause of action” raised in the Estate’s 2009 lawsuit — Jarrett’s personal liability — is precisely the same “cause of action” that Dillard raised before the Commission during 2001.

S. Identities of the Parties

¶ 21. “[S]trict identity of parties is not necessary for ... res judicata ... to apply, if it can be shown that a nonparty stands in privity with the party in the prior action.” EMC Mortg. Corp. v. Carmichael, 17 So.3d 1087, 1090-91 (¶ 13) (Miss.2009). “[P]rivity is a broad concept!.]” Id. at 1091 (¶ 13) (citation and internal quotation marks omitted). “[P]arties must be substantially identical for res judicata to apply.” Id. Under the precise circumstances of this case, Jarrett is unquestionably in privity with Dixie Products. In his response to the Estate’s interrogatories, Jarrett said that he was the only person who had acted as the president, secretary, and treasurer of Dixie Products since 1994. Jarrett was the only president of Dixie Products since it was first incorporated in 1984. He owned one-half of the stock in Dixie Products, and his children owned the remainder. Jarrett was also listed as Dixie Products’ registered agent for service of process. Jarrett allowed the commingling of assets for the benefit of his various businesses as it suited him. Dixie Products, 770 So.2d at 969 (¶ 10). In effect, Dixie Products was Jarrett’s corporate alter ego. Additionally, the Estate’s entire theory of liability is based on the fact that Jarrett was the president and secretary of Dixie Products, and he failed to obtain workers’ compensation insurance. According to the Estate’s complaint, Jarrett “was required to carry worker[s’] compensation insurance at all times and failed to do so. Therefore, [Jarrett] is personally liable for the judgment rendered in the worker[s’] compensation claim.”
¶ 22. Furthermore, “[p]rivity implies a relationship by succession or representation between the party to the second action and the party to the prior action in respect to the right adjudicated in the first action.” Coleman v. Miss. Farm Bureau Ins. Co., 708 So.2d 6, 9 (¶ 12) (Miss.1998). There is a relationship by succession or representation between Dillard and Dillard’s Estate. Consequently, the Estate is in privity with Dillard. It follows that the third identity is satisfied for purposes of res judicata.
*1214 A Identity of the Quality or Character of the Person Against Whom the Claim Is Made
¶ 23. As recently as 2009, the Mississippi Supreme Court has noted that it has been “unable to locate any caselaw that specifically states what must be established to meet this prong of the res judica-ta test....” EMC, 17 So.3d at 1091 (¶ 15). Generally speaking, “[w]here someone is sued in a limited or representative capacity in one cause and then personally in another, the party’s ‘quality or character’ is not the same in both actions.” In re Estate of Bell, 976 So.2d 965, 968 (¶ 8) (Miss.Ct.App.2008) (quoting McCorkle v. Loumiss Timber Co., 760 So.2d 845, 856 (¶ 47) (Miss.Ct.App.2000)). But when a party is a named defendant in a first and second suit, the identity or character of the defendants is the same. Id. Incident to the first lawsuit, Dillard did not name Jarrett as a defendant in his individual capacity. Jarrett was named as a defendant in his individual capacity incident to the second lawsuit. Although it would appear that the fourth identity is not present, it is critical to note that the doctrine of res judicata precludes parties from litigating claims that “were made or should have been made ” in a prior lawsuit. Anderson, 895 So.2d at 832 (¶ 10) (emphasis added).
¶ 24. The first lawsuit involved Dillard’s workers’ compensation claim against Jarrett’s corporation, Dixie Products. During 2001, Dillard’s attorney informed Jarrett of Dillard’s request that the Commission “enter a judgment against [him] personally since [he] failed to maintain [w]orker[s’] [c]ompensation insurance.” A few months later, Dillard’s other attorney sent a letter to the AJ and outlined a number of unresolved issues remaining in Dillard’s workers’ compensation claim. According to Dillard’s attorney, one of the remaining issues was:
Whether [Dillard’s] award should be against [Dixie Products] solely or should be against [Jarrett] since [he] failed to maintain workers’] compensation insurance and since, upon information and belief, [the assets of Dixie Products are] grossly insufficient to satisfy any claim, [Dixie Products] has been depleted of all assets, and [it] is no longer in operation.
Consequently, it is clear that Dillard and his attorneys were aware that Jarrett’s individual liability was an issue during 2001. They simply failed to obtain a ruling on it.
¶ 25. All four identities of the doctrine of res judicata are present. Consequently, we find that the circuit court erred when it did not find that the Estate’s 2009 lawsuit — as it pertains to the claim that Jarrett should be personally hable for Dillard’s judgment against Dixie Products— was precluded by the doctrine of res judi-cata. It follows that we reverse the circuit court’s judgment for the Estate and render a judgment in Jarrett’s favor.
II. STATUTE OF LIMITATIONS
¶26. Although our resolution of Jarrett’s first issue renders this issue moot, we address Jarrett’s claim that the Estate’s 2009 lawsuit was untimely to advance what appears to be an issue of first impression. That is, we have been unable to locate any precedent that is precisely on point regarding when a claimant must raise a claim that he is entitled to relief under section 71-3-83(1). Accordingly, we will consider this issue to aid the bench and the bar.
¶ 27. Jarrett claims that the Estate’s 2009 lawsuit was barred by the statute of limitations. It is unclear precisely when Dillard first discovered that Dixie Products did not have workers’ compensation insurance. However, during the ini *1215 tial litigation before the Commission, Dixie Products claimed that it was exempt from the obligation to purchase workers’ compensation insurance. Dixie Products, 770 So.2d at 967 n. 1. It follows that Dillard knew or should have known that Dixie Products did not have workers’ compensation insurance sometime before he received an award of temporary benefits during June 1997.
¶28. Additionally, Dillard’s attorneys certainly knew that Jarrett’s personal liability was an issue during February 2001. As previously mentioned, Dillard’s attorney sent Jarrett a letter informing him that Dillard intended to have Jarrett made personally liable for Dillard’s benefits. And in June 2001, Dillard’s other attorney informed the AJ that Jarrett’s personal liability was an unresolved issue. However, the Estate failed to obtain a ruling on Jarrett’s personal liability.
¶ 29. Section 71-3-83(1) does not reference a time limit for obtaining relief. Mississippi Code Annotated section 15-1^9(1) (Rev.2012) provides that “[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.” Dillard’s obligation to assert his claim to relief under section 71-3-83(1) accrued when he knew or should have known that Dixie Products did not have the requisite workers’ compensation insurance to cover his claim for benefits. See Jackson v. State Farm Mut. Auto. Ins. Co., 880 So.2d 336, 343 (¶ 21) (Miss.2004) (the statute of limitations for an uninsured-motorist claim begins to run when it can be reasonably known that the damages suffered exceed the limits of insurance available to the alleged tortfeasor).
¶ 30. Arguably, Jarrett should have raised his claim under section 71-3-83(1) no later than June 2000. That Dillard obtained an award of temporary benefits in June 1997 is of no moment. Although not directly on point, the United States Court of Appeals for the Fifth Circuit has held that an employer’s bad-faith refusal to pay temporary disability benefits per the Commission’s order triggers the three-year statute of limitations period that applies to claims for bad-faith refusal to pay workers’ compensation benefits. Patrick v. Wal-Mart Inc.—Store No. 155, 681 F.3d 614, 620-21 (5th Cir.2012). This is true despite the fact that there may be unresolved issues remaining before the Commission. Id. By extension, it was not necessary for Dillard to wait until he obtained a judgment that addressed all of the issues before the Commission before he could claim that he was entitled to relief under section 71-3-83(1). Dillard and the Estate waited approximately twelve years after Dillard first discovered that Dixie Products did not have workers’ compensation insurance to assert Jarrett’s personal liability. Even if we view the record with extraordinary lenience, Jarrett was required to raise his claim to section 71-3-83(1) relief before June 2004.
¶ 31. The dissent would allow a plaintiff to sleep on his rights for more than a decade, and then raise a claim that could have been raised during previous litigation under the semantic premise that the neglected claim is merely an action to enforce a judgment against someone who was not a judgment debtor. With utmost respect, we do not agree with the dissent’s reasoning. As discussed above, the Estate’s 2009 lawsuit against Jarrett cannot be considered purely as an action to enforce a judgment when it was necessary to first obtain a judgment against Jarrett. Even assuming that the dissent is correct, nothing prevented Dillard from attempting to enforce that judgment from the moment that Dillard received temporary benefits in *1216 1997. Therefore, even if the dissent is correct that a seven-year statute of limitations applies, that period lapsed during 2004. We cannot agree with the dissent’s implied conclusion that a claimant with an accrued right to seek relief may sleep on his rights for more than a decade, and then file a subsequent lawsuit solely to seek relief that had been available during the previous lawsuit. Accordingly, we find that the circuit court erred when it declined to find that the Estate’s 2009 lawsuit against Jarrett was barred by the statute of limitations.
CONCLUSION
¶ 32. Dillard’s attorneys knew that Jarrett’s individual liability was an issue during 2001. They never obtained the Commission’s ruling on it, and they did not file posttrial motions to clarify the issue. Thus, the requirement that the previous judgment be final was satisfied. EMC, 17 So.3d at 1091 (¶ 16). Years later, the Estate filed a new lawsuit on essentially the same issue. Suffice it to say, we find that all four identities of res judicata are present. Therefore, we find that the circuit court erred when it declined to find that the doctrine of res judicata precluded the Estate’s claim against Jarrett in his individual capacity. Furthermore, we find that the Estate’s 2009 lawsuit against Jarrett was an untimely attempt to seek relief that had been available to Dillard as early as 1997. It follows that the circuit court erred when it did not find that the Estate’s 2009 lawsuit against Jarrett was barred by the statute of limitations.
¶ 33. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT IS REVERSED, AND JUDGMENT IS RENDERED FOR THE APPELLANT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, J.

. There was no substitution of parties in the pending workers' compensation case.

. The date of the hearing is not stated in the record, and the record does not contain a transcript of the hearing.

.It is unclear how Dillard would have been receiving permanent disability benefits. The Commission’s previous judgment awarded Dillard temporary total disability benefits of approximately $200 per week until further order. If there was a subsequent order modifying Dillard’s award, that order is not within the record presently before us.