WALLACE *v*. COPIAH COUNTY LUMBER Co., et al.

No. 39452 January 24, 1955 77 So. 2d 316

*Leon E. Provine,* Grenada, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellees.

Roberds, P. J.

On the night of June 29, 1952, appellant Wallace was employed by appellee as a night watchman at its lumber mill in Copiah County, Mississippi. Wallace claims that about 10:50 o'clock on that night, while about his duties, he fell from the steps used in connection with the dry kiln at that mill and injured his right ankle. He filed with the Compensation Commission a claim for his injuries under the Mississippi Workmen's Compensation Act, Chap. 354, General Laws of Mississippi, 1948, as amended by Chap. 412, Laws of Mississippi, 1950.

After a full hearing the attorney-referee made this finding of fact and law:

"The evidence is in conflict in this case and the Attorney-Referee finds from the evidence that claimant did not meet the burden of proof necessary to show he sustained an accidental injury to his ankle which arose out of and in the course of his employment. The Attorney-Referee finds claimant did sustain an injury to his ankle, but the accident resulting in the injury occurred at a time when claimant was walking from his place of employment to his home after he had left the premises of his employer and at a time when he was not engaged in his employment. That the accident occurred when claimant slipped or fell in a ditch in the public highway."

The foregoing findings were affirmed by the full Commission and the trial judge on appeals to those tribunals.

Wallace says that the finding of fact that the injury occurred in the public highway is against the great weight of the testimony, and he urges us to reverse that finding.

Wallace was the only eye-witness to his injury. His case depends on his own testimony and what he told his wife and two sons, according to what they testified. Wallace said he was injured when he fell from the steps of the dry kiln just before eleven o'clock. He went off duty, and Monroe Wells came on duty as a watchman, at that hour. Wallace testified that when this exchange was being made he told Wells of his fall and that he had injured himself. He said he was dragging his right leg and was in much pain and had great difficulty in walking. Wells testified that, while he and Wallace did engage in a rather extensive conversation, that Wallace never mentioned his fall or his injury. Wells gave the details of their conversation, and said that Wallace, in reply to his inquiry as to how Wallace was feeling, said he was all right. Wells also testified Wallace was not limping and he noticed nothing wrong with the manner of his walking.

Wallace's home was a quarter of a mile from the mill plant on the opposite side of Highway 20. Dr. Akin, who examined Wallace's injury on July 1, 1952, testified that Wallace told him at that time that he was walking along that highway from the plant to his home and he was blinded by an approaching automobile and stepped into a hole or a ditch, thereby causing his injury.

Martin, a neighbor to Wallace, and who lives just across the road from him, said Wallace told him the same thing, and pointed to the place where he was hurt.

Claimant's wife and two sons testified that Wallace told them he was injured at the kiln steps. However, in addition to the testimony of the several parties, as above shown, that Wallace told them he was injured in the pub-

lic road, Wallace did not make known to his employer, and did not assert any claim for compensation, until sometime in November, 1952, some five months after the injury occurred.

■ ■ "We must respect the findings of the attorney-referee, the Commission and the trial judge unless such findings are against the weight of the evidence, or are manifestly wrong." Smith v. St. Catherine Gravel Company, 220 Miss. 462, 71 So. 2d 221. See also, as recognizing the stated principle, Thornton v. Magnolia Textiles, ........ Miss. ........, 55 So. 2d 172; Dillon v. Gasoline Plant Construction Corporation, 222 Miss. 10, 75 So. 2d 80; Barry v. Sanders Co., 211 Miss. 656, 52 So. 2d 493; Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356, and Dowdle & Pearson v. Hargrove, 222 Miss. 64, 75 So. 2d 277. ■ ■ We cannot say that the great weight of the evidence is against the finding that the injury occurred in the public highway and not on the premises of the employer. Indeed, we think the weight of the evidence supports such finding.

■ ■ As to the liability of employers for injuries received by employees off of the premises of the employer, and while such employees are going to or returning from their work, Larson states the rule in this summary: "As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours or at lunch time are compensable, but if the injury occurs off of the premises, it is not compensable, subject to several exceptions * * *." Larson's Workmen's Compensation Law, Vol. 1, page 194. The rule is stated in 58 Am. Jur., Workmen's Compensation, Sec. 217, in this language: "The hazards encountered by employees while going to or returning from their regular place of work, before reaching or after leaving the employer's premises, are not ordinarily incident to the employment, and for this reason injuries resulting from such hazards are in most instances held not to be compensable as arising out of

and in the course of the employment.'' The books contain many cases, too many for us to cite, sustaining that general proposition.

However, the general rule is subject to a number of exceptions, such as (1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in connection with his employment at home; or (3) where the employee is injured by some hazard or danger which is inherent in the conditions along the route necessarily used by the employee; or (4) where the employer furnishes a hazardous route; or (5) where the injury results from a hazardous parking lot furnished by the employer; or (6) where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises.

The courts are divided as to whether liability may rest upon all of these exceptions, and there may be exceptions not set out above constituting ground of liability in the opinion of some of the courts. However, those stated include any exception which could rest upon the facts and circumstances of the case at bar. The conclusion of the attorney-referee, affirmed by the full Commission and the trial judge, necessarily held that the facts herein did not establish liability based upon an exception to the general rule of nonliability where the injury occurred off the premises of the employer. We will endeavor to review the testimony in an effort to determine, as near as we may, at just what place on the highway the injury did occur, according to statements made by Wallace to other parties, and whether the circumstances bring claimant within an exception to the general rule of liability.

Highway 20 runs generally east and west. In the vicinity of the mill and the home of Wallace, it seems to run a little northeast and southwest. The mill property is on the south side of the road, and adjoins the right-of-way thereof. That right-of-way is 100 feet wide.

There is an unused space between the highway and the mill. The mill property extends some distance east along the south side of the highway. There is evidence, though rather vague and uncertain, of the existence of a wagon, or logging, road from the mill itself to the public highway, and also of the existence of a path leading to the highway from the mill, the path coming into the highway west of the logging road. Also, one leaving the mill property and going to the highway could traverse the mill property without using the road or path. Some of the employees do that. It is not at all clear from this record which way would be the better, nor is it shown which was used by Wallace in approaching the highway. The road is hard-surfaced. As stated, Wallace lived a quarter of a mile east of his place of work and on the north side of the highway. His house faces south. He had to cross the highway to get from the mill to his home. That is the general setting.

Wallace's testimony is of no aid in determining where he fell. He testified "I never fell nowhere only at the kiln." He expressly stated he was not injured at any place except at the kiln. He spoke of the difficulty of dragging his injured leg, or foot, over a "high place," where gravel was washed away, "a little old peak," but, according to his testimony, he had already suffered his injury back at the kiln, and the difficulty in walking resulted from that injury. He is in the anomalous position of swearing he was hurt at the kiln and at no other place, and yet endeavoring to base liability on the peculiar circumstances surrounding injury which occurred in the public highway.

Dr. Akin testified that Wallace told him he was injured while in the public highway "on the way home" by falling into a ditch; that Wallace did not give the exact point where the injury occurred.

Mrs. Wallace testified Wallace called her as he got to the steps of the home. She said her home was a quarter of a mile from the mill and across the road therefrom.

She spoke of a little plank apparently used by pedestrians near her home; she also said "some people go to work up a little bank right in front of the house."

Mr. Little, foreman at the mill, said the road right-of-way was 100 feet wide; that there was an unused space between the mill property and the road right-of-way; that there was a small ditch on either side of the road; that the mill property was some fifty feet from the ditches; that there was no fence around the mill property and no requirement, or direction, as to the way one might choose in going to and from the premises of the Lumber Company; that one coming and going might travel one of several routes as he might choose.

 Martin, who lives across the road immediately south from Wallace, gave this account of what Wallace said to him: "He said that he had started home when he left, got off from work that night, and started down a bank over there right in front of his house and a car had blinded him and he had stepped in a shallow ditch there," and hurt himself. During his examination, this witness said "It is right on the edge, after you leave the mill yard, on the bank of the road." Appellant makes much of this on the appeal. He says that placed Wallace with one foot in the public highway and the other on the mill property. The quoted statement is rather vague, of course, but the witness cleared it up. He was asked "Mr. Martin, as I understand it, this place where you were talking about was there on the edge, was on the highway, the ditch on the highway? A. Yes. Q. It wasn't upon the mill property in the mill yard? A. No, sir." It will be noted the attorney-referee did not find and designate the exact spot on the public highway as the place where the injury occurred, but he did find that it happened after claimant had left the premises of his employer. As a matter of fact the testimony does not disclose the exact spot, but the greater weight of the evidence is to the effect it occurred near claimant's home, which would be a quarter of a mile away from the claim-

ant's place of work. But the overall burden of proof to show he comes within one of the exceptions in such manner as to impose liability on the employer was upon the claimant. Mastin & Company v. Mangum, 215 Miss. 454, 61 So. 2d 298.

■■ We do not see any peculiar or unusual circumstances here to invoke any of the exceptions we have set out above. There were a number of approaches to and from the plant used by the employees. They could select their own route; the employer furnished no special route; certainly the highway, under the facts here, did not, from a legal standpoint, become a part of the employer's premises. Penton v. Margate Bridge Company, 94 Atl. 848 (N. J.). There was no greater danger to claimant in using the public highway than to any other pedestrian thereon. Applying the facts and circumstances of this case to the exceptions above enumerated, we do not see how it can be concluded, as a matter of reason and logic, that it is within any of the foregoing enumerated exceptions to the general rule of nonliability for accidents which occur off of the premises of the employer. ■■ "Where the decisions of the Board and court involve the consideration of conflicting evidence as to essential facts or the deductions of permissible but diverse inferences therefrom, their solutions of such conflict are presumed to be correct, and the burden of proof is upon the party attacking them to show that they were erroneous." Partoll v. Annaconda Copper Mining Company, 203 Pac. 2d 974 (Montana).

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.