350 So.2d 689 (1977)
MILLER TRANSPORTERS, INC. and Fireman's Fund Insurance Company
v.
DEPENDENTS of Daniel L. SEAY.
No. 49664.
Supreme Court of Mississippi.
September 21, 1977.
Rehearing Denied October 26, 1977.
*690 Daniel, Coker, Horton, Bell & Dukes, Joel W. Howell, III, Jackson, for appellants.
Bridgforth, Love, Norquist & Stewart, Bradford M. Stewart, Yazoo City, for appellees.
Before INZER, ROBERTSON and BROOM, JJ.
ROBERTSON, Justice, for the Court:
This is a workmen's compensation case. The administrative judge found:
"That at the time of his death, Daniel L. Seay, was proceeding to his place of employment in his own private vehicle for which he was not reimbursed any mileage expense, and that this vehicle crashed, resulting in fatal injuries to Mr. Seay; therefore, the decedent's death did not arise out of and in the course and scope of his employment with Millers Transporters, Inc."
He, therefore, denied the claim of the dependents of Daniel L. Seay, deceased, for full death benefits against the employer and carrier. The full Commission affirmed the order of the administrative judge.
On appeal, the Circuit Court of Yazoo County reversed the order of the full Commission, and found:
"[T]hat the deceased was killed while accommodating the employer in an emergency situation after he had completed his week's work and was taking off the next day or the seventh day of the work week, ... ."
and that Seay's dependents were entitled to recover full death benefits.
The sole question is whether or not the death of Daniel L. Seay arose out of and in the course of his employment with Miller.
Seay was employed as a truck driver by Miller Transporters, Inc., and worked out of the Yazoo City-Crupp terminal. At approximately 3:30 A.M., Friday morning, September 13, 1974, Seay received a phone call from C.C. Mauldin, dispatcher for Miller. Mauldin told Seay that Billy Thomas had just called in sick and could not take a load of asphalt to Dundee, Mississippi. Mauldin testified:
"I asked him if he wanted it. He asked where Dundee was. I got out my maps and guided him to it there. And he said that yeah, he'd take it so  "
Mauldin further testified that he was calling in accordance with the dispatch procedure set up under the union contract which guaranteed Seay a minimum of $155.60 per week. Section 20.9 of the labor agreement also provided:

*691 "The guarantee will be valid only if the driver makes himself available for duty six (6) days out of the work week. The guarantee applies to all drivers who have been on the payroll thirty (30) days or more."
The testimony was uncontradicted that Seay had completed his work week and that a new week would not begin until Saturday, September 14th.
Mauldin also testified:
"Q. Assuming in this particular case that Mr. Thomas was sick, was it compulsory that Mr. Seay accept this assignment or did he have a choice in the matter?
"A. No, he had a choice. I had other people not working.
"Q. So this was purely a voluntary acceptance on his part, is that right?
"A. Yes, that's a good load."
The labor agreement also provided that when a driver is called after cutoff time (6:00 P.M.) that he shall be paid a minimum guarantee of four (4) hours pay at the regular hourly rate of pay.
Mauldin stated that this was about a four-hour trip one way, and at least an eight-hour round trip. So this was a good assignment.
Seay was driving his own van on his regular route, old Highway 3, to the Yazoo City-Crupp terminal, which was about 10 miles from his home, when on a straight stretch of the highway he apparently went to sleep and was killed when he ran into a cedar tree approximately 140 yards from the entrance to the terminal.
The general rule with reference to going to or returning from work is stated in Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965):
"This Court is firmly committed to the general rule that the hazards encountered by employees while going to or returning from their regular place of work and off the employer's premises are not incident to employment and accidents arising therefrom are not compensable. Wallace v. Copiah County Lumber Company, 223 Miss. 90, 77 So.2d 316 (1955); Dunn, Mississippi Workmen's Compensation § 103 (1957). And an employee who claims an exception to this general rule has the burden of proving that he comes within one of the exceptions. Edward Hyman Co. v. Rutter, 241 Miss. 301, 130 So.2d 574 (1961)." 252 Miss. at 858, 174 So.2d at 497.
See also: Dunn, Mississippi Workmen's Compensation, section 175 (2nd Ed. 1967), at pages 232, 233.
One of the exceptions to this general rule is where the employee is on a special mission or errand for his employer or where he is accommodating his employer in an emergency situation. The circuit court, acting as an appellate court, in its opinion made this observation:
"The Court certainly can take judicial knowledge, although the record is silent, that this asphalt `had to roll'."
and then found:
"[T]hat the deceased was killed while accommodating the employer in an emergency situation after he had completed his week's work and was taking off the next day or the seventh day of the work week."
The testimony does not support the circuit court's observation or finding. Where the uncontradicted testimony was that it was a four-hour trip to Dundee, the asphalt did not "have to roll" and there was no emergency situation.
Also, there was no pressure on Seay to accept this load. It was free and voluntary on his part and he apparently accepted it because it was a good-paying load.
Mrs. Jacquelyn S. Seay, his widow, testified on direct examination:
"A. They called him and asked him if he wanted this load.
"Q. And he accepted the load?
"A. He accepted the load."
Then, on cross-examination, she testified:
"Q. It was not unusual for Mr. Seay to receive telephone calls during the night to go out on a load, was it?

*692 "A. No sir.
"Q. This was a customary  not customary, but not an unusual procedure at all.
"A. No."
There was substantial evidence supporting the full Commission's finding that "the decedent's death did not arise out of and in the course and scope of his employment with Millers Transporters, Inc." The circuit court, acting as an appellate court (on the record only) should not have reversed the Order of the Commission.
The Order of the circuit court is, therefore, reversed, and the Order of the Workmen's Compensation Commission reinstated.
REVERSED AND RENDERED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
BOWLING, J., took no part.