416 So.2d 963 (1982)
Godfrey STEPNEY
v.
INGALLS SHIPBUILDING DIVISION, LITTON SYSTEMS, INC.
No. 53250.
Supreme Court of Mississippi.
June 2, 1982.
Rehearing Denied July 14, 1982.
Roberts, Hull and Clark, Wynn E. Clark, Gary L. Roberts, Pascagoula, for appellant.
Franke, Rainey & Salloum, Paul M. Franke, Jr., Gulfport, for appellee.
Before SUGG, ROY NOBLE LEE and DAN M. LEE, JJ.
ROY NOBLE LEE, Justice, for the Court.
Godfrey Stepney filed a claim for compensation benefits and Ingalls Shipbuilding Division, Litton Systems, Inc. [Ingalls] the self-insured employer answered, denying that appellant was injured in the course and scope of his employment. A hearing was held before an administrative judge September 21, 1979, and he found that Stepney failed to establish that his injuries occurred within the course and scope of his employment. On appeal to the full Commission, the administrative judge's order was affirmed and, subsequently, on April 13, 1981, the full Commission's order was affirmed by the Circuit Court of Jackson County, Honorable Clinton E. Lockard, presiding. Stepney has appealed to this Court and has assigned three (3) errors in the proceedings below.
The questions presented by the assignments of error are whether or not the Commission and lower court erred in denying compensation benefits to the claimant and whether or not claimant is entitled to compensation under the "Threshold Doctrine" or "Special Hazards" rule, which is an exception to the "Going and Coming" rule.
On May 4, 1978, claimant was employed by Ingalls where he worked on the 7:00 a.m. to 3:00 p.m. shift as a first-class pipefitter. Claimant had a thirty-minute lunch break each day and was permitted by Ingalls to drive home for lunch, so long as he returned to work by 12:00 p.m. At approximately 11:50 a.m., while driving along the sole access road leading into the shipyard and its parking lot, he was involved in a two-car accident, and was seriously injured. The accident occurred on the access road in front of the Ingalls Employment Office.
According to claimant, he was driving along the access road, a six-lane highway, *964 which was comprised of three (3) lanes each for north and south traffic. A pickup truck was several car lengths ahead of him in the righthand lane, and, as it passed a road leading into the employment office, one David Trotter drove out in front of claimant and the two (2) vehicles collided. At the time of the accident, and during the lunch break, claimant was driving his own personal car, was not being reimbursed for transportation expenses and was not paid any remuneration. He had not been instructed to perform any duty or task for Ingalls during his lunch period.
The general rule with reference to going to and returning from work was stated in Miller Transporters v. Seay's Dependents, 350 So.2d 689 (Miss. 1977), citing from Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965), as follows:
"This Court is firmly committed to the general rule that the hazards encountered by employees while going to or returning from their regular place of work and off the employer's premises are not incident to employment and accidents arising therefrom are not compensable. Wallace v. Copiah County Lumber Company, 223 Miss. 90, 77 So.2d 316 (1955); Dunn, Mississippi Workmen's Compensation § 103 (1957). And an employee who claims an exception to this general rule has the burden of proving that he comes within one of the exceptions. Edward Hyman Co. v. Rutter, 241 Miss. 301, 130 So.2d 574 (1961)." 252 Miss. at 858, 174 So.2d at 497.
See also: Dunn, Mississippi Workmen's Compensation section 175 (2nd Ed. 1967), at pages 232, 233. [350 So.2d at 691].
In Wallace v. Copiah County Lumber Co., 223 Miss. 90, 77 So.2d 316 (1955), the Court set out the following exceptions to the rule:
(1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in connection with his employment at home; or (3) where the employee is injured by some hazard or danger which is inherent in the conditions along the route necessarily used by the employee; or (4) where the employer furnishes a hazardous route; or (5) where the injury results from a hazardous parking lot furnished by the employer; or (6) where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises. [223 Miss. at 99, 77 So.2d at 318].
In Wallace, a night watchman for a lumber mill was injured while walking home at night for a lunch break. He slipped and fell in a hole or ditch alongside a public road leading from the mill to his home approximately one-fourth (1/4) mile away. The Court said:
We do not see any peculiar or unusual circumstances here to invoke any of the exceptions we have set out above. There were a number of approaches to and from the plant used by the employees. They could select their own route; the employer furnished no special route; certainly the highway, under the facts here, did not, from a legal standpoint, become a part of the employer's premises. Fenton v. Margate Bridge Company, 24 N.J. Super. 450, 94 A.2d 848. There was no greater danger to claimant in using the public highway than to any other pedestrian thereon. [223 Miss. at 102, 77 So.2d at 319].
In 1 Larson, Workmen's Compensation Law, § 15.13, at 4-22 (1978), an exception to the "Going and Coming Rule" known as the "Special Hazards" exception or the "Threshold Doctrine" is stated to contain two parts: (1) the presence of a special hazard at the particular off-premises point, and (2) the close association of the access route with the premises, so far as going and coming are concerned. Section 15.14, at 4-29, further states: "[T]he clearest case for compensability is found when the off-premises route is the only means of access to the premises."
The Minnesota Court held in Ludwig v. Farmers' Shipping Assn., 181 Minn. 90, 231 N.W. 803 (1930), that an employee, on his *965 way to lunch in his personal car, off the employer's premises, struck by a train as he crossed the tracks, which ran perpendicular to the sole access road leading to and from the employer's premises, was entitled to compensation, and said the following:
Being required to exclusively travel this particular road made dangerous by its location, he was put in the position of one who had no choice in the selection of a route of travel. His employment, in effect, directed its use. For all practical purposes this short road was a part of his employer's premises. He was expected to and did use it as if it were such. He was consequently subjected to a degree of exposure greater than the public generally, who used it occasionally only. He was also in a different position than an ordinary workman in coming and going to and from his work, being exposed only to ordinary street risks. [231 N.W. at 804].
In 1 Larson, Workmen's Compensation Law, § 15.15, at 4-42, 4-43 (1978), Professor Larson states:
[I]t is not proximity, or reasonable distance, or even the identifying of surrounding areas with the premises: it is simply that, when a court has satisfied itself that there is a distinct "arising out of" causal connection between the conditions under which the claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend.
Ingalls argues that no special hazard existed because the access road was a public thoroughfare and employees, who used the road, were exposed to no greater risk of accident than were members of the general public, who traveled the road.
Cases from other jurisdictions have held that the elements of a special hazard may be supplied by the necessity of making a left turn across traffic in a public street for the purpose of entering the employer's premises. In those cases, granting compensation has involved the fact that an employee is exposed to a greater degree of risk than the general public because he is required to make the turn in order to gain entrance to the work premises and, therefore, he is exposed to the risk with greater frequency than the general public, which is not required generally to make a turn at that junction. See Greydanus v. Industrial Acc. Comm., 63 Cal.2d 490, 47 Cal. Rptr. 384, 407 P.2d 296 (1965); Pacific Ind. Co. v. Industrial Acc. Comm., 28 Cal.2d 329, 170 P.2d 18 (1946); Templet v. Intracoastal Truck Line, Inc., 255 La. 193, 230 So.2d 74 (1969); Husted v. Seneca Steel Service, Inc., 41 N.Y.2d 140, 391 N.Y.S.2d 78, 359 N.E.2d 673 (1976); and Wilkinson v. Industrial Comm., 23 Utah 2d 428, 464 P.2d 589 (1970).
Cases from other jurisdictions holding that a special hazard existed on an access road follow.
In Rambo v. International Dry Wall Co., 44 Md. App. 693, 410 A.2d 627 (1980), the claimant was injured while riding as a passenger in an automobile driven by a co-employee. The only access road leading into the employer's premises was a partially-paved road. The automobile struck a manhole cover protruding approximately four (4) to six (6) inches above the ground, which the Maryland Court held to be a special hazard rendering the injury compensable.
Nelson v. Douglas Fir Plywood Co., 260 Or. 53, 488 P.2d 795 (1971), involved injuries to a claimant riding as a passenger in an automobile on her way to work, when the vehicle was struck by a plywood truck as her automobile was making a right turn onto a private road leading to the employee parking lot. The road the automobile turned onto was the only access road leading into the plant. The Court held that the intersection was abnormally hazardous for her as an employee because several large trucks owned by the company made that turn numerous times each day.
In Bechtel Corporation v. Winther, 262 Ark. 361, 556 S.W.2d 882 (1977), the deceased lost his life while driving to work from home. The body was found in the deceased's submerged automobile, which had left a causeway at a curve one-quarter (1/4) mile from the plant's back entrance. The causeway cut across a lake, which led *966 to one of the two plant entrances, and was regularly used by approximately two hundred (200) or three hundred (300) workers daily on their way to the employer's premises. On the morning of the accident, the weather was foggy and the visibility was poor. The causeway had no guardrails and had a gravel surface. The Arkansas Court held that a special hazard existed and the claim was compensable.[1]
The following things are significant in the case at bar:
(1) The six-lane road or street was the only access and exit to the Ingalls West Bank shipyard and the situs of claimant's employment.
(2) Although the street was either maintained or owned by the county or state, it was used principally by employees of Ingalls and those persons who had business with Ingalls.
(3) During changes of shifts and lunch breaks, thousands of Ingalls employees left and entered the plant by that sole access route, the six-lane street.
(4) The premises on each side of the access road were owned and used by Ingalls. In addition to a regulation red stop sign at the point where the collission occurred, Ingalls had erected another sign with the following words thereon:
 "Dangerous
 Intersection
 STOP
 Look Both Ways
 Before Entering Road" [See Appendix I]
(5) Ingalls knew and recognized that the intersection of the access road and the road leading from the employment office constituted a hazard and the placement of the aforementioned sign at that point is an admission by it thereof.
(6) The appellant was exposed to a greater hazard than the general public for the reason that he worked regularly every week and was required to cross the dangerous intersection on his way to and from work each day.
We recognize the principle that, under the Mississippi Workmen's Compensation Act, a claimant must establish by competent evidence his injury arose out of and in the course of his employment, and that causal connection must be shown between the employment and the injury. However, it is only necessary to prove that the injury resulted from activity which is (1) in its overall contours actuated at least in part by a duty to serve the employer, or (2) reasonably incidental to the employment. Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888 (Miss. 1980).
In 1 Larson, Workmen's Compensation Law, § 15.15 at 4-42 (1978), Professor Larson reconciles the "arising out of" and "in the course of" concepts, in conjunction with the "special hazards" exception, as follows:
One may now pause and ask: what is the principle behind these exceptions to the premise rule? It is clearly not a conceptual one based on traditional tests of employment relation for respondeat superior or other purposes. There is no control whatever over the employee during the critical period, nor is he being paid wages during this time. He is not advancing his master's interests any more than other employees returning home. In short, for respondeat superior purposes he would not be in the course of his employment.
The answer here suggested is this: in this instance, as in many others, the concept of "course of employment" follows that of "arising out of employment"; that is, the employment-connected risk is first recognized, and then a course-of-employment theory must be devised to permit compensation for that obviously occupational risk.
This is exactly what has happened here. Claimant has been subjected to a particular risk because of his employment, the *967 risk of crossing certain railway tracks near the plant entrance, for example. Since it is so obvious that a causal relation exists between the work and the hazard, the always-ill-fitting course of employment concept has got to be stretched at least far enough to prevent the injustice of denying compensation for an injury admittedly caused by the employment.
We conclude that claimant's injury is compensable under the Mississippi Workmen's Compensation Act and that claimant is entitled to compensation benefits. The judgment of the lower court and the order of the Mississippi Workmen's Compensation Commission are reversed and judgment is rendered granting unto claimant compensation benefits. The case is remanded to the Mississippi Workmen's Compensation Commission for further proceedings to determine those benefits.
REVERSED AND RENDERED; REMANDED TO THE MISSISSIPPI WORKMEN'S COMPENSATION COMMISSION.
PATTERSON, C.J., SMITH and SUGG, P.JJ., and WALKER, BROOM, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.

NOTES
[1] The Mississippi Workmen's Compensation Act was copied in large from the Arkansas Workmen's Compensation Act and this Court has long recognized and considered the construction that jurisdiction has given to its statutes in interpreting and construing our act. See Graeber Bros., Inc. v. Taylor, 237 Miss. 691, 702, 115 So.2d 735, 740 (1959).