A04A1735. COLLIE CONCESSIONS, INC. et al. v. BRUCE.
(612 SE2d 900)

MIKELL, Judge.

We granted Collie Concessions, Inc.'s application for a discretionary appeal to review the order of the superior court reversing the appellate division of the State Board of Workers' Compensation's adoption of the administrative law judge's ("ALJ") denial of benefits to Lillie Bruce. Based on the reasons set forth below, we reverse.

> In the absence of legal error, the factual findings of the State Board of Workers' Compensation must be affirmed by the superior court and by the Court of Appeals when supported by any evidence in the administrative record. However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review.[1]

The facts are undisputed, and our review is de novo. The injury occurred on April 10, 2002, when Bruce was on her way to work as a cashier for Collie Concessions at the Masters Golf Tournament. Collie Concessions had a contract with Augusta National Golf Club/Masters Tournament to provide food and beverage concession services for the Masters Golf Tournament. Bruce only worked for Collie Concessions

---

[1] (Citations and footnotes omitted.) *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003).

during the week of the Masters and had done so annually since 1981.

On the day in question, Bruce rode to work with Mae and Rebecca Gilmer, with whom she had been riding for the previous 12 to 14 years. Gilmer parked in the yard of a house located on the corner of Cherry Lane and Berckman Road (the "Cherry Lane lot").[2] Collie Concessions had been allotted by the tournament director 25 passes for its employees to park in this lot. It gave them to its cashiers, managers, and assistant managers on a first come first serve basis. Collie Concessions did not own, maintain, or have control of the Cherry Lane lot. The lot was also utilized by persons unaffiliated with Collie Concessions.

Bruce was assigned to Concession Stand 5 and was required to enter the tournament grounds through Gate 7, which was located on Berckman Road. The Cherry Lane lot was located approximately 100 yards south of Gate 7. When Bruce reached the temporary pedestrian crosswalk that traversed Berckman Road and ended at Gate 7, she began to cross the street and was struck by a motor vehicle.

Bruce filed a claim for workers' compensation benefits against Collie Concessions. Bruce acknowledged the general rule that accidents which occur on the way to or from work are not compensable, but relied on the exception to this rule that the period of employment generally includes a reasonable time for ingress to and egress from the place of work while on the employer's premises. Therefore, Bruce maintained that her injuries were compensable because she was injured on her employer's premises during her ingress to her place of work. Collie Concessions opposed the claim, arguing that the general rule precluded Bruce's recovery. Further, Collie Concessions argued that the parking lot exception did not apply because it did not own, maintain, or control the Cherry Lane lot.

The ALJ agreed with Collie Concessions, concluding that Bruce's injury was not compensable because it occurred while she was going to work. Furthermore, the parking lot exception did not apply because the Cherry Lane lot was not a part of Collie Concessions's premises. The appellate division agreed. The superior court reversed. It did not rely on the parking lot exception but found instead that the temporary crosswalk was part of the employer's premises. It reasoned that the crosswalk should be treated no differently than other parts of the tournament grounds and that the tournament grounds were the "employer's premises" for purposes of workers' compensa-

---

[2] Berckman Residential Properties, LLC, the sole member of which was Augusta National, Inc., owned the Cherry Lane lot.

tion coverage. In several related enumerations of error, Collie Concessions challenges the basis for the superior court's order. We reverse.

1. "A compensable injury for purposes of the Workers' Compensation Act[3] must arise out of and in the course of employment."[4] It is the general rule that accidents occurring while an employee is traveling to and from work do not arise out of and in the course of employment,[5] and therefore injuries sustained during that time are not compensable. However, exceptions have been made to the general rule allowing the award of benefits

> where the employer furnishes transportation; or where the employee is doing some act permitted or required by the employer and beneficial to the employer while en route to and from work; or where the employee is going to and from parking facilities *provided by the employer* [also known as the "parking lot" exception]; or in instances where an employee is on call and furnishes or is reimbursed for his transportation costs.[6]

Bruce's argument arises in connection with the parking lot exception.

In *Tate v. Bruno's, Inc./Food Max*,[7] we explained the exception as follows: "when an employee is injured in, or going to and from, a parking lot *which is owned or maintained by the employer*, the incident is compensable under workers' compensation since the injury arose during the employee's ingress or egress from employment."[8] In the seminal case of *Federal Ins. Co. v. Coram*,[9] we found this situation analogous to those "where the employee first reports to one part of the employer's premises for instructions, assignment, clock punching, drawing tools, etc.[,] and then must proceed to

---

[3] OCGA §§ 34-9-1 through 34-9-421.

[4] (Footnotes omitted.) *Harrison v. Winn Dixie Stores*, 247 Ga. App. 6, 7 (542 SE2d 142) (2000).

[5] *Connell v. Head*, 253 Ga. App. 443, 444 (559 SE2d 73) (2002).

[6] (Emphasis supplied.) *Harrison*, supra at 7, citing *Corbin v. Liberty Mut. Ins. Co.*, 117 Ga. App. 823 (162 SE2d 226) (1968). There are also special rules for traveling salesmen. See, e.g., *New Amsterdam Cas. Co. v. Sumrell*, 33 Ga. App. 299 (126 SE 271) (1925); *Thornton v. Hartford Accident & Indem. Co.*, 198 Ga. 786 (32 SE2d 816) (1945).

[7] 200 Ga. App. 395 (408 SE2d 456) (1991).

[8] (Citations omitted; emphasis in original.) Id. at 396-397 (1).

[9] 95 Ga. App. 622 (98 SE2d 214) (1957) (Felton, C. J.), disapproving *Gay v. Aetna Cas. & Surety Co.*, 72 Ga. App. 122 (33 SE2d 109) (1945) (Felton, J., dissenting), and adopting the dissent in that case as the law in Georgia. Accord *U. S. Cas. Co. v. Russell*, 98 Ga. App. 181 (105 SE2d 378) (1958); *Gen. Accident Fire &c. Assurance Corp. v. Worley*, 86 Ga. App. 794 (72 SE2d 560) (1952).

another portion of the premises to begin his actual duties,"[10] the rationale being that the parking lot is considered to be a part of the employer's premises.[11] In several cases since *Federal Ins. Co.*,[12] we have applied this exception to allow benefits where the employee was injured on a public street during ingress or egress from/to the employer's parking lot.[13] However, we have refused to extend the exception to cover injuries sustained going to or from parking lots not owned, controlled, or maintained by the employer or those occurring in such parking lots. The facts in this case are more closely analogized to the latter cases.

In *Tate*,[14] the employee was involved in an automobile accident while she was leaving a public parking lot that was not owned, controlled, or maintained by the employer but was used by its employees as well as patrons and employees of other stores in the shopping center.[15] We followed the general rule that injuries sustained on the way to or from work are not compensable.[16] Similarly, in *City of Atlanta v. Spearman*,[17] the facts of which are analogous to this case, the employee was not allowed to recover workers' compensation benefits. There, the employee fell and injured herself while walking from the parking lot to her place of employment. As in this case, the employer in *Spearman* did not own, maintain, or control the parking lot but was allocated a certain number of parking spaces therein.[18] We held that control over the allocation of parking spaces did not equate to control and direction over the parking lot itself.[19] As the employer did not control the parking lot, it was not responsible for the injuries occurring on the route to its premises. In *Hill v. Omni Hotel at CNN Center*,[20] we declined to extend the exception where the employee slipped and fell after entering the CNN Center on her way to work at the Omni Hotel, which could be accessed through the CNN Center. We found that the area of the building where the employee fell was not a part of her employer's premises because it was not owned,

---

[10] (Citation omitted.) Id. at 624.

[11] See *Tate*, supra at 397 (1).

[12] Supra.

[13] *Longuepee v. Ga. Institute of Technology*, 269 Ga. App. 884 (605 SE2d 455) (2004); *Knight-Ridder Newspaper Sales v. Desselle*, 176 Ga. App. 174, 175 (335 SE2d 458) (1985) (physical precedent only); *West Point Pepperell v. McEntire*, 150 Ga. App. 728 (258 SE2d 530) (1979).

[14] Supra.

[15] Id. at 396-397 (1).

[16] Id. at 397 (1).

[17] 209 Ga. App. 644 (434 SE2d 87) (1993).

[18] Id.

[19] Id. at 645 (1).

[20] 268 Ga. App. 144 (601 SE2d 472) (2004).

controlled, or maintained by the employer.[21]

In this case, there is no dispute that the parking lot from which Bruce was walking when she was struck was not owned, controlled, or maintained by her employer. Like the employer in *Spearman*,[22] Collie Concessions was allocated a certain number of spaces in the Cherry Lane lot, which spaces were given to employees on a first come first serve basis. Thus, the lot was not a part of Collie Concessions's premises.

2. Some decisions imply that a claim is within the exception when the parking lot is maintained or controlled by the employer.[23] However, a careful review of those cases shows that the control or maintenance of the lot must exist in conjunction with the ownership or lease thereof to support a finding that the parking lot exception applies. In the case at bar, the ALJ found as fact that the Cherry Lane lot was controlled by Augusta National. That finding is supported by some evidence because agents of Augusta National gave out permits to park in the lot and restricted access to it.

The full board in its Findings of Fact and Conclusions of Law found that Augusta National "owned and controlled the use" of the Cherry Lane lot during the tournament because Augusta National was the "owner" of Berckman Residential Properties, LLC. If that assertion is a finding of fact, it is unsupported by the evidence; if it is a conclusion of law, it is erroneous. Augusta National was indeed the sole member of the LLC. But a member of a limited liability company does not own property owned by the LLC.[24] Clearly Augusta National controlled the Cherry Lane lot. But mere control, in the absence of ownership or a lease, has not yet been enough to invoke the parking lot exception.

It is true that the Workers' Compensation Act should be given a liberal construction "to effectuate the humane purposes for which [it] was enacted."[25] But the parking lot exception already liberalized the Act. We have always confined that exception to instances where the transit was to or from a parking lot owned, or leased, by the employer. The Cherry Lane lot was not owned or leased by Augusta National or by Collie Concessions. Therefore the parking lot exception does not

[21] Id. at 148.

[22] Supra.

[23] E.g., *Tate*, supra at 397 (1) (own, direct, control, or maintain); *Spearman*, supra at 644 (lot "managed, operated, and controlled" by nonemployer; employer allocated spaces); *Knight-Ridder*, supra (lot leased and "under the direction and control" of employer); *Harrison*, supra at 8 (employer owned or controlled parking lot is within the exception (dictum)); *West Point Pepperell*, supra (employer owned and "controlled" lot).

[24] See OCGA § 14-11-501 (a).

[25] (Citation and punctuation omitted.) *Travelers Ins. Co. v. Southern Elec.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993).

apply, and the injury was not compensable.

3. In addition, we reject the superior court's conclusion that the "temporary pedestrian crosswalk was part of the employer's premises since it was constructed for use only during the week of the Masters and was not present during any other time of the year." The claimant in her brief admitted that Berckman Road is a public street. Neither the special purpose of the crosswalk, nor its brief duration, gave ownership and control of the street to Augusta National or to Collie Concessions. *Peoples v. Emory Univ.*,[26] cited by the superior court, does not establish otherwise. In *Peoples*, the claimant, a janitor who worked at Emory Law School, was injured after crashing his bike while on a campus street owned by his employer, Emory University. He had already passed the law school building and was traveling to another building to sign in and obtain keys.[27] As he was injured on property owned, maintained, and controlled by Emory, we held that his injury arose out of and in the course of his job pursuant to the "ingress and egress" rule.[28] The fact that Emory owned the street on which the claimant was injured distinguishes *Peoples* from the instant case, and the superior court erred in relying on it.

The court also erred in concluding that the crosswalk should be treated no differently than other parts of Augusta National for the purpose of workers' compensation coverage. In so holding, the court relied on *DeHowitt v. Hartford Fire Ins. Co.*[29] *DeHowitt*, however, is distinguishable. In *DeHowitt*, it was held that "[w]here the employer's place of business is located in a building of which it occupies only a part, and two ways through the building are the only means of ingress and egress to and from such place of business, both ways are parts of the employer's premises within the meaning of the workmen's compensation law."[30] The court's reliance on *DeHowitt* was undoubtedly based on the fact that Bruce was required to enter Augusta National through Gate 7 on Berckman Road. The court may have reasoned that the temporary crosswalk leading to Gate 7 was analogous to the ingress to the building found to be part of the employer's premises in *DeHowitt*. To its detriment, the superior court did not have the benefit of our recent decision in *Omni Hotel*.[31] That case explained that the general rule in Georgia is that

---

[26] 206 Ga. App. 213 (424 SE2d 874) (1992).
[27] Id. at 214.
[28] Id.
[29] 99 Ga. App. 147 (108 SE2d 280) (1959).
[30] Id. at 148 (7).
[31] Supra.

accidents that occur while employees are traveling to and from work do not arise out of and in the course of employment and thus are not compensable under the Workers' Compensation Act. But under the "ingress and egress" rule, where an employee is injured *while still on the employer's premises* in the act of going to or coming from his or her workplace, the Act does apply.[32]

As noted above, we held in *Omni Hotel* that the area where the employee was injured, the food court/mall area, was not a part of her employer's premises because it was not owned, controlled, or maintained by the employer.[33] *Omni Hotel* distinguished *DeHowitt* on the basis that the record clearly showed that a third party, Turner Properties, owned, controlled, and maintained the premises at issue.[34] In the case at bar, neither Augusta National nor Collie Concessions owned, maintained, or controlled the street or the crosswalk. The Board found that the temporary crosswalk was constructed by Augusta-Richmond County for special use by the tournament. Therefore, the crosswalk was not part of Bruce's employer's premises, and her injury is not compensable.

4. In awarding benefits to Bruce, the superior court also relied on the positional risk doctrine. The positional risk doctrine exists in some circumstances to satisfy the requirement that an injury arise out of a claimant's employment. It can apply when the cause of the injury had nothing to do with the claimant's usual duties. For example, in the leading case employing the positional risk doctrine, *Nat. Fire Ins. Co. v. Edwards*,[35] the claimant was on his employer's premises when a tornado damaged the premises and injured the employees. Under case law prior to *Edwards*, the injury would not have been compensable because, although it clearly occurred in the course of his employment, it did not arise out of his employment.

The claimant in *Edwards* was on the premises of the employer and was in the course of his employment when injured. As discussed in Division 3, Bruce was not on her employer's premises when she was in the crosswalk. And she was not in the course of her employment,

---

[32] (Citations omitted; emphasis in original.) Id. at 147.

[33] Id. at 148.

[34] In *DeHowitt*, a third party also owned, controlled, and maintained the premises where the injury occurred. *Omni Hotel* additionally distinguished *DeHowitt* by noting that there are multiple possible entrances to the CNN Center but there were only two entrances in *DeHowitt*.

[35] 152 Ga. App. 566 (263 SE2d 455) (1979). Accord *Chaparral Boats v. Heath*, 269 Ga. App. 339 (606 SE2d 567) (2004).

but rather was on her way to work. Therefore, *Edwards* does not support her claim. A variant of the positional risk doctrine appears in the traveling salesman cases such as *New Amsterdam Cas. Co. v. Sumrell*[36] and *Thornton v. Hartford Accident & Indem. Co.*[37] But the traveling salesman cases have not been extended to allow recovery for other types of employees who are injured off the premises while going to and from work. We decline to extend the positional risk doctrine to make compensable an injury which occurs while an employee is going to or from work, unless the injury occurs on the premises or within the parking lot exception, even when, as in the case at bar, the employer designates a particular time to come to work and a particular route or portal to use.

The superior court relied on *Johnson v. Publix Supermarkets*[38] in order to apply the positional risk doctrine to Bruce's claim. The plurality opinion in *Johnson* was technically "physical precedent only" since less than a majority of the judges concurred fully.[39] But the superior court's reliance on *Johnson* was not unreasonable as it reflected at that time the latest thinking on the subject by six judges of our court. However, after the superior court reached its decision, *Johnson* was expressly disapproved in *Chaparral Boats v. Heath*.[40] Therefore, contrary to the superior court's ruling, *Johnson* does not support the application of the positional risk doctrine to the case at bar.

5. Based on our holdings above, we need not address Collie Concessions's remaining enumerations of error.

*Judgment reversed. Blackburn, P. J., concurs specially and in judgment only. Barnes, J., concurs in judgment only.*

BLACKBURN, Presiding Judge, concurring specially.

Because I cannot concur with all that is said in the majority opinion, I must concur in the judgment only.

The relevant facts in this case are straightforward. Lillie Bruce, an annual employee of Collie Concessions, Inc., drove to the Augusta National Golf Club to work at one of Collie's concession stands along the golf course. As instructed by Collie, Bruce parked in a lot which Collie did not own, lease, control, or maintain. While walking to the golf course, Bruce was struck by a car while crossing a public street. Bruce subsequently requested workers' compensation benefits for her injuries from Collie.

---

[36] Supra.
[37] Supra.
[38] 256 Ga. App. 540 (568 SE2d 827) (2002), disapproved, *Chaparral Boats*, supra.
[39] Court of Appeals Rule 33 (a).
[40] Supra.

Under these facts, Bruce has not shown that she is entitled to workers' compensation because she was neither: (1) acting in furtherance of her duties on Collie's behalf at the time of her injuries nor (2) going to or from work to a parking lot which was owned or maintained by Collie.

1. "Generally, an injury is compensable only if it arises out of and in the course of the employment. The test presents two independent and distinct criteria, and an injury is not compensable unless it satisfies both." (Footnote omitted.) *Mayor and Aldermen of the City of Savannah v. Stevens.*[41] Also, as a general matter, the "rule in this state is that accidents that occur while employees are traveling to and from work do not arise out of and in the course of employment and thus are not compensable under the Workers' Compensation Act." *Hill v. Omni Hotel at CNN Center.*[42]

In this case, it is undisputed that Bruce was simply going to work at the time that she was injured, not acting in the course of her employment. Therefore, in the absence of some applicable exception to the general rules cited above, Bruce is not entitled to workers' compensation benefits. *Hill,* supra.

2. Bruce maintains that the "parking lot exception" entitles her to workers' compensation benefits. This contention is wholly misplaced.

The parking lot exception

> provides that when an employee is injured in, or going to and from, a parking lot which is owned or maintained by the employer, the incident is compensable under workers' compensation since the injury arose during the employee's ingress or egress from employment. The rationale which has allowed compensation for injuries which occur in, or going to or coming from, parking lots which are owned, maintained or controlled by the employer does not extend so far as to allow coverage when workers' compensation benefits are claimed for an injury which occurred in a public parking lot which was neither owned, controlled, nor maintained by the employer. Where the parking lot is neither owned, controlled, nor maintained by the employer, the lot is not part of the employer's premises and the rationale which allows recovery of workers' compensation benefits does not apply.

---

[41] *Mayor and Aldermen of the City of Savannah v. Stevens,* 278 Ga. 166 (1) (598 SE2d 456) (2004).

[42] *Hill v. Omni Hotel at CNN Center,* 268 Ga. App. 144, 147 (601 SE2d 472) (2004).

(Citations, punctuation and emphasis omitted.) *City of Atlanta v. Spearman.*[43]

In this case, it is undisputed that Bruce's employer, Collie, did not own, maintain, or control the parking lot in which she parked. As such, the parking lot cannot be considered part of Collie's premises, and the exception simply does not apply to Bruce's accident. *Spearman,* supra.

A similar analysis is applicable to the crosswalk in which Bruce was struck by a car. As it was part of a public street, it is also undisputed that it was not owned, maintained, or controlled by Collie. And again, Bruce's injuries do not qualify her for workers' compensation benefits as she was not injured while on property which could be considered part of Collie's premises. *Spearman,* supra.

Therefore, at the time that she was injured, Bruce simply was not walking from one part of Collie's premises to another at the time that she was injured. Accordingly, the trial court erred in its determination that Bruce was entitled to workers' compensation benefits.

3. Given the unambiguous nature of the precedent cited above, there is no need to speculate whether Augusta National's golf course might be considered Collie's business premises, and this case cannot and should not under any circumstances be considered to establish any such circumstance in future cases dealing with concessionaires and their employees working at sporting sites. The parking lot exception is clearly anchored on notions of enforceable real property rights, and any interpretation of this case to hold otherwise would be clearly erroneous.

DECIDED MARCH 30, 2005.

*Shivers & Associates, George L. Parson,* for appellants.
*Raymond J. Doumar,* for appellee.

---

[43] *City of Atlanta v. Spearman,* 209 Ga. App. 644, 645 (1) (434 SE2d 87) (1993).