¶ 1. Douglas Cain filed a workers' compensation claim against his employer Jesco, Inc., and its insurance carrier, Zurich American Insurance Company, for injuries sustained when he was hit by a car. On the bifurcated issue of compensability, the Workers' Compensation Commission ruled in Cain's favor. The Lee County Circuit Court affirmed the Commission's decision and remanded the case to determine Cain's benefits. Jesco appeals and argues that: (1) Cain did not receive his injuries in the course and scope of his employment, and (2) no exceptions to the "going and coming" rule apply. We find no error and affirm. We remand the case to the Commission for a determination of benefits.
 FACTS ¶ 2. Cain was an electrician employed by Jesco. Jesco was the electrical contractor on a construction project for North Mississippi Medical Center in Tupelo. The project consisted of renovations to the hospital's critical care unit on the second story on the south side of the building.
 ¶ 3. The hospital maintained an employee parking lot to the south, across the street on Garfield Street. Because the hospital wanted to keep its patient and staff parking available, Jesco instructed its employees to park in the hospital's employee parking lot. Jesco's employees were subject to disciplinary action if they did not do so. Jesco's employees were required to park in this lot, walk across the street to the hospital, and walk up a hill to a tool trailer to report to work every morning. Jesco's work hours were from 6:00 a.m. to 4:30 p.m.
 ¶ 4. On February 21, 2003, at about 5:45 a.m., Cain arrived and parked in the employee parking lot. He began to walk across Garfield Street to go to work. It was dark outside, and there were no lights or traffic control devices. Cain was struck by a vehicle driven by Michael McGaha. Both Cain and McGaha denied seeing each other. As a result of the accident, both of Cain's arms and legs were broken, his right elbow was fractured, and his right shoulder was dislocated.
 ¶ 5. Cain filed a petition to controvert before the Commission. The parties agreed to bifurcate the issues of compensability and award. Because the facts were not in dispute, the parties forwarded stipulated facts, the Motor Vehicle Accident Report, and depositions to the administrative judge. He found that Cain's injury fell within four of the enumerated exceptions to the "going and coming" rule. In particular, the administrative judge found that the unlit parking lot and street in the early morning hours posed a special hazard to Cain which did not exist for the general public. On review, the Commission agreed with the administrative judge. After the circuit court affirmed the Commission, Jesco's appeal has been deflected to this Court for review.
 STANDARD OF REVIEW ¶ 6. An appellate court must defer to an administrative agency's findings of fact if there is even a quantum of credible evidence which supports the agency's decision. Hale v.Ruleville Health Care Ctr., 687 So.2d 1221, 1224
(Miss. 1997). "This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious." Id. at 1225; Ga. Pac. Corp. v.Taplin, 586 So.2d 823, 826 (Miss. 1991). Questions of law will be reviewed de novo. Smith v. Jackson Constr. Co.,607 So.2d 1119, 1125 (Miss. 1992).
 ANALYSIS I. Did Cain's injuries arise within the course and scope of his employment? *Page 540 
II. Does an exception to the "going and coming" rule apply?
 ¶ 7. Under both of these issues, Jesco argues whether the "going and coming" rule bars compensation. Therefore, we will address the first two issues together.
 ¶ 8. Jesco argues that Cain's injury is not job related since he had not yet clocked-in at work that morning. Cain asserts that there was substantial credible evidence for the Commission to conclude that four of the exceptions to the "going and coming" rule applied. Specifically, (1) he was injured by some hazard inherent in the route to work, (2) Jesco furnished this hazardous route, (3) the injury resulted from a hazardous parking lot furnished by Jesco, and (4) the place of injury, although not owned by Jesco, was in such close proximity to the work premises as to be considered part of such premises.
 ¶ 9. In workers' compensation cases, the general rule is that "hazards encountered by employees while going to or returning from their regular place of work and off the employer's premises are not incident to employment and accidents arising therefrom are not compensable." Miller Transporters, Inc. v. Seay'sDependents, 350 So.2d 689, 691 (Miss. 1977). This is known as the "going and coming" rule. Id. As with any rule, however, there are exceptions. Id. Namely, these are:
 (1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in connection with his employment at home; or (3) where the employee is injured by some hazard or danger which is inherent in the conditions along the route necessarily used by the employee; or (4) where the employer furnishes a hazardous route; or (5) where the injury results from a hazardous parking lot furnished by the employer; or (6) where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises; or (7) when the employee is on a special mission or errand for his employer, or where the employee is accommodating his employer in an emergency situation.
Duke ex rel. Duke v. Parker Hannifin Corp.,925 So.2d 893, 896-97 (¶ 12) (citing Miller Transporters,350 So.2d at 691 and Wallace v. Copiah County Lumber Co.,223 Miss. 90, 98-99, 77 So.2d 316, 317-18 (1955)). The employee has the burden of proving whether one of these exceptions applies. Ingalls Shipbldg. Div., Litton Sys., Inc. v.Dependents of Sloane, 480 So.2d 1117, 1118-19 (Miss. 1985). Doubtful cases must be resolved in favor of compensation in order to fulfill the beneficent purposes of the Workers' Compensation Act. Duke, 925 So.2d at 897-98 (¶ 15).
A Special hazards exception
 ¶ 10. Our supreme court examined this issue in a similar fact situation in Dependents of Sloane. Floye Sloane was killed when, crossing the street after work, she was hit by an automobile. Dependents of Sloane, 480 So.2d at 1118. At the time, she was employed with Ingalls as a porter on the night shift, working from 9:00 p.m. to 5:30 a.m. Id.
at 1117-18. She worked in the Employment Office Building on the west side of Litton access road. Id., at 1118. The road was maintained by the State of Mississippi and was the sole access road to Ingalls. Id. It consisted of six lanes.Id. Between 5:30 and 7:00 a.m., thousands of Ingalls employees would enter the road from Highway 90 to the north to arrive at work. Id.
 ¶ 11. Fellow employee Betty Tanner gave Sloane a ride to work each day. Tanner *Page 541 
worked in another building at the shipyard. Id. After work, Tanner would drive north along Litton road and pull into a U-turn area in front of the Employment Office Building.Id. Because of the heavy traffic flowing southbound, it was impractical for her to make a left turn into the Employment Office parking lot. Id. Instead, Sloane would cross three lanes of traffic to reach Tanner's vehicle. Id. On the last such occasion, Sloane was struck by a southbound vehicle and killed. Id. The court relied on Stepney v.Ingalls Shipbuilding Division, Litton Systems, Inc.,416 So.2d 963 (Miss. 1982) and applied the special hazards exception to the "going and coming" rule. Dependents of Sloane,480 So.2d at 1119. In particular, it found that the heavy southbound traffic of Litton road was an inherent danger along the route necessarily used by Sloane to and from work.Id. It further found that no practical alternate routes were available to her. Id.
 ¶ 12. As the Stepney court explained, the special hazards exception applies when there is "(1) the presence of a special hazard at the particular off-premises point, and (2) the close association of the access route with the premises, so far as going and coming are concerned." Stepney,416 So.2d at 964. Importantly, the court noted:
 [I]t is not the proximity, or reasonable distance, or even the identifying of surrounding areas with the premises: it is simply that, when a court has satisfied itself that there is a distinct "arising out of causal connection between the conditions under which the claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend.
Id. at 965 (quoting 1 Larson, Workmen's Compensation Law, § 15.15 (1978)). Stepney involved an accident at the same intersection on Litton road as the Dependents ofSloane case. Stepney, 416 So.2d at 963. Stepney was returning to work from lunch, traveling southbound on Litton road. Id. Another vehicle pulled out in front of him.Id. at 964. In applying the special hazard exception, the court found:
 (1) The six-lane road or street was the only access and exit to the Ingalls West Bank shipyard and the situs of claimant's employment.
 (2) Although the street was either maintained or owned by the county or state, it was used principally by employees of Ingalls and those persons who had business with Ingalls.
 (3) During changes of shifts and lunch breaks, thousands of Ingalls employees left and entered the plant by that sole access route, the six-lane street.
 (4) The premises on each side of the access road were owned and used by Ingalls. In addition to a regulation red stop sign at the point where the collision occurred, Ingalls had erected another sign [warning of the dangerous intersection].
 (5) Ingalls knew and recognized that the intersection of the access road and the road leading from the employment office constituted a hazard and the placement of the aforementioned sign at that point is an admission thereof.
 (6) The appellant was exposed to a greater hazard than the general public for the reason that he worked regularly every week and was required to cross the dangerous intersection on his way to and from work each day.
Id. at 966. Therefore, the court reversed and rendered the Commission's denial of compensation. Id. at 967.
 ¶ 13. Many of our sister jurisdictions have likewise applied the special hazard *Page 542 
exception to compensate pedestrian employees who were injured while crossing the street between the employee parking lot and the work site. For example, the Kansas Supreme Court held:
 where the employee uses a company-owned parking lot on one side of a public street that is a heavily traveled major city artery and must walk across that street to reach the company's plant for work, and where the general public uses such route only in dealing with the employer, we hold that such employee is using a route that involves a special risk or hazard.
Chapman v. Beech Aircraft Corp., 258 Kan. 653,907 P.2d 828, 835 (1995). In a similar case, the Alaska Supreme Court remanded to determine if special hazardous conditions existed at point in which the employee crossed the street from parking lot to the work site. Sokolowski v. Best W. Golden LionHotel, 813 P.2d 286, 294-95 (Alaska 1991). The parking lot was not owned by the employer, but it had obtained permission for its employees to park there. Id. Likewise, the Oklahoma Supreme Court ruled, "when an employee must of necessity cross a public street in order to reach his car in the employer-provided parking lot, traffic on that street constitutes an employer-created hazard and injury suffered while crossing it in going to or coming from lunch is deemed to arise out of and in the course of employment." Fudge v. Univ. of Okla.,673 P.2d 149, 150 (Okla. 1983).
 ¶ 14. Applying Stepney and Dependents ofSloane to this case, we first examine whether there was the presence of a special hazard at the off-premises point where Cain was injured. The Commission found that "the route the claimant necessarily had to take from the parking lot to the employer's premises was inherently hazardous at the time of day the injury occurred, and the claimant was exposed to that hazard on a daily basis." There is substantial credible evidence to support this finding.
 ¶ 15. The facts are undisputed. Cain was hit by McGaha's vehicle while crossing the street between the Garfield parking lot and work. The parking lot was right across the street from Jesco's work site on the hospital premises. Particularly, the work site included a trailer located on the south side (Garfield Street side) of the hospital and the critical care unit, on the south side second floor of the hospital. Employees had to report to the tool trailer to clock in. After parking in the employee parking lot, employees crossed Garfield Street on foot. Jesco's shifts started at 6:00 a.m. The accident occurred at 5:45 a.m. in February, and it was dark outside. There were no lights in the parking lot nor on the street. There were no traffic signals nor crosswalks. Both McGaha and Cain testified that they did not see one another. Indeed, there was substantial credible evidence to support the Commission's finding that a special hazard existed at the off-premises accident site.
 ¶ 16. Next, we examine whether there is a "close association of the access route with the premises, so far as going and coming are concerned." The Commission decided this issue in the affirmative, because this was the route that Jesco's employees had to take in order to go to the work site. The route was the common and direct route between the parking lot and the hospital. Moreover, Jesco required its employees to park in this lot, otherwise it would take disciplinary action.
 ¶ 17. Although Cain's supervisor Jeff Mize testified there was another available parking lot, this was half a mile away, on the east side of the hospital. The existence of an impractical alternate route will not bar recovery. Dependents ofSloane, *Page 543 480 So.2d at 1119. In fact, Mize admitted that the east parking lot served as a supplemental lot, in case the Garfield lot was full. Thus, there "is a distinct `arising out of causal connection between the conditions under which [Cain had to] approach . . . the premises and the occurrence of the injury."Stepney, 416 So.2d at 965.
 ¶ 18. There was substantial credible evidence to support the Commission's finding that Cain's accident satisfied the third exception to the "going and coming" rule.
B. Premises exception
 ¶ 19. The Commission also found that Cain satisfied the sixth exception to the "going and coming" rule — "where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises."
 ¶ 20. Indeed, some jurisdictions apply the premises exception to compensate pedestrian employees between the off-site parking lot and the work site. See, e.g., Collie Concessions, Inc.,v. Bruce, 272 Ga. App. 578, 612 S.E.2d 900, 903 (2005);P.B. Bell Assocs. v. Indus. Comm'n of Ariz., 142 Ariz. 501, 690 P.2d 802, 810 (Ariz.Ct.App. 1984). The rationale in these cases is that the employee is traveling from one of the employer's premises (the parking lot) to another of the employer's premises (the work site); therefore, the travel "arises out of employment.
 ¶ 21. Mississippi holds that employee parking lots are part of the work site premises. Green v. Glen Oaks NursingCtr., 722 So.2d 147, 150 (¶ 12) (Miss.Ct.App. 1998). This is true whether the employer owns the parking lot or has provided for its use by a license. Adams v. Lemuria, Inc.,738 So.2d 295, 298 (¶ 11) (Miss.Ct.App. 1999).
 ¶ 22. The place of injury was Garfield Street, which is not owned by Jesco. Although Jesco did not own the employee parking lot, Jesco received permission and authority from the hospital to use this parking lot for Jesco's employees as well. Thus, the parking lot became part of Jesco's work premises. Id. It is undisputed that Garfield Street lies between this parking lot and Jesco's tool trailer. This area of the street thus became "in such close proximity to the premises as to be in effect, a part of such premises." Because Cain was using Garfield Street enroute between two noncontiguous work site premises, his injury arose out of his employment.
 ¶ 23. Nevertheless, Jesco points to Mooneyhan v. BoydTunica, Inc., 850 So.2d 119 (Miss.Ct.App. 2002) as support for its position that Cain did not satisfy the special hazards exception. Even if this were true, Cain did satisfy an alternate exception to the "going and coming" rule.
 ¶ 24. Mooneyhan is distinguishable. While leaving work at Sam's Town Casino, Betty Mooneyhan was involved in a motor vehicle accident on Highway 304 in Robinsonville after she pulled out of the parking lot. Id. at 120 (¶ 3). She failed to prove the existence of a special inherent hazard at the off-premises point. Id. at 122 (¶ 11). On the other hand, there is substantial credible evidence to support the Commission's finding that Cain did prove the existence of an inherent hazard — a street crossing at dark, with no lights, traffic signals nor crosswalk. We find that this issue has no merit.
 CONCLUSION ¶ 25. We affirm the Commission's ruling of compensability and remand the case *Page 544 
to the Commission for a determination of benefits.
 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY ISAFFIRMED, AND THE CASE IS REMANDED TO THE WORKERS' COMPENSATIONCOMMISSION FOR A DETERMINATION OF BENEFITS. ALL COSTS OF THISAPPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. *Page 930