973 So.2d 1008 (2008)
Richard W. LADNER, II, Appellant
v.
GRAND BEAR GOLF COURSE/GRAND CASINO OF MISSISSIPPI and Great American Insurance Company of New York, Appellees.
No. 2007-WC-00231-COA.
Court of Appeals of Mississippi.
January 15, 2008.
James Kenneth Wetzel, Gulfport, attorney for appellant.
Ronald T. Russell, Gulfport, attorney for appellees.
Before LEE, P.J., IRVING and ROBERTS, JJ.
*1009 LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On January 14, 2001, Richard Ladner was involved in a one-vehicle accident on the way to his job at the Grand Bear Golf Course in Harrison County, Mississippi. The accident occurred approximately one-to-two miles from the entrance to Grand Bear. As a result of this accident, Ladner was left with serious and disabling injuries.
¶ 2. On January 13, 2003, Ladner filed a petition to controvert with the Mississippi Workers' Compensation Commission. After a hearing, the administrative law judge (ALJ) denied benefits. Both the Commission and the Harrison County Circuit Court affirmed the decision of the ALJ. Ladner now appeals asserting that the decision of the Commission was not supported by substantial evidence.

FACTS
¶ 3. Just after 6:00 a.m. on January 14, 2001, Ladner was traveling on Grand Way Boulevard toward Grand Bear Golf Course. Ladner stated that he saw an oncoming vehicle with its lights on through the clearing in the trees. Ladner testified that he dimmed his lights and then ran into a tree on the south side of the roadway. Ladner assumed this vehicle he saw contained a hunter because during deer season hunters frequented the roadway. The accident occurred within a twenty-five mile-per-hour zone. One of the sheriff's department deputies who reported to the scene testified that Ladner admitted that he was driving approximately forty-five miles per hour.
¶ 4. At the time of the accident, Ladner was in his early twenties and worked as an assistant mechanic at, Grand Bear Golf Course. Ladner worked six days a week at Grand Bear approximately eight to twelve hours a day. All of his work was performed on the premises of the golf course and country club. The entrance to Grand Bear is located at the end of a county road known as Grand Way Boulevard, approximately six miles east of Highway 49. The land surrounding this road is part of the DeSoto National Forest. There were no physical structures located on this six-mile road at the time of the accident.
¶ 5. In 1999, an easement was obtained from the U.S. Forestry Service by Robert Knesal, a Harrison County Engineer, in order to pave the subject road. At that time in 1999, the road was constructed of dirt and had been used as a logging trail. Knesal stated that because of restrictions by the federal government Harrison County was unable to make the road a straight highway. Knesal testified that Grand Bear helped pay some of the paving expenses, but the county was responsible for the actual paving of the road, the layout of the road, placement of the drainage ditches, placement of the center line and road-edge stripes, and determination of the speed limit.
¶ 6. At the time of Ladner's accident, the road was a paved, two-lane public highway with a number of curves and little or no shoulder. The posted speed limit was twenty-five miles per hour, but in certain areas of the road where the curves were sharp, the posted speed limit was fifteen miles per hour.

STANDARD OF REVIEW
¶ 7. The standard of review in workers' compensation cases is well established. The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss. *1010 2003) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992)). If the Commission's decision and findings of fact are supported by substantial evidence, then we are bound by them even if we, as fact finder, would have been convinced otherwise. Spann v. Wal-Mart Stores, 700 So.2d 308, 311(¶ 12) (Miss.1997) (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). We will exercise de novo review on matters of law. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss. 1991).

DISCUSSION
¶ 8. Ladner's sole argument is that the evidence does not support the decision by the Commission to deny him benefits. Specifically, Ladner argues that his case falls under the recognized exceptions to the general rule that accidents which occur off premises while traveling to or from one's place of employment are not compensable. Quoting from Miller Transporters, Inc. v. Dependents of Seay, 350 So.2d 689, 691 (Miss.1977), the supreme court, in Stepney v. Ingalls Shipbuilding Division, Litton Systems, Inc., 416 So.2d 963, 964 (Miss.1982), stated the general rule with reference to going to and returning from work as follows: "[t]he general rule [is] that the hazards encountered by employees while going to or returning from their regular place of work and off the employer's premises are not incident to employment and accidents arising therefrom are not compensable." However, there are exceptions to the general rule. Those exceptions were also set out by the supreme court in Stepney as follows:
(1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in connection with his employment at home; or (3) where the employee is injured by some hazard or danger which is inherent in the conditions along the route necessarily used by the employee; or (4) where the employer furnishes a hazardous route; or (5) where the injury results from a hazardous parking lot furnished by the employer; or (6) where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises.
Id. (quoting Wallace v. Copiah County Lumber Co., 223 Miss. 90, 99, 77 So.2d 316, 318 (1955)). An employee who claims an exception to the general rule must prove that he or she comes within one of the exceptions. Aetna Fin. Co. v. Bourgoin, 252 Miss. 852, 858, 174 So.2d 495, 497 (1965).
¶ 9. In Stepney, the supreme court explained that the special hazards exception applies when there is "(1) the presence of a special hazard at the particular off-premises point, and (2) the close association of the access route with the premises, so far as going and coming are concerned." Stepney, 416 So.2d at 964.
¶ 10. Ladner asserts that his case falls within more than one exception to the rule and that the testimony of his expert witness, Louis Rash, proved that Ladner's case fell within the third, fourth, and sixth exceptions listed in Stepney. Id. Rash, a civil engineer, testified that the road was particularly hazardous based upon the curvature of the road, the length of the curves, the lack of visibility in some areas, and the location of vegetation close to the edge of the road. However, upon cross-examination, Rash admitted that if Ladner was in fact traveling forty-five miles per hour as he admitted to one of the deputies, then the excessive speed would have caused. Ladner to run his vehicle off the road. Rash also later admitted that the *1011 general curvature of the road did not create a special hazard. Rash also testified that, although this road was the only route to get to Grand Bear, he observed members of the general public utilizing this road for other purposes than going to Grand Bear. Rash admitted that, although he was employed as an expert witness to determine if the road in question met the design requirements of a county road, he had never seen any regulations for a rural county road.
¶ 11. Rash had testified that the road created a special hazard if Ladner's vehicle was in the curve of the road and Ladner was then blinded by oncoming headlights. However, Rash agreed that the curve of the road would be irrelevant if Ladner was on a straight stretch of road prior to his accident. There was some discrepancy as to where exactly Ladner's vehicle left the road, but Ladner testified that he was driving on a straight stretch of road and left the road before reaching the curve.
¶ 12. In her opinion, the ALL whose opinion was accepted by the Commission, discussed Rash's testimony in depth and noted the various discrepancies discussed above. The ALJ also reviewed testimony from the other witnesses. Danny Hodges, the traffic and safety superintendent for Harrison County, testified that Harrison County was responsible for maintaining the road up to the gates into Grand Bear. Hodges stated that he determined the speed limit for the road, placed signs along the road, and placed the appropriate stripes along the road. Hodges said there are between four and six speed-limit signs along Grand Way Boulevard, as well as six "winding road" signs. Hodges testified that, in his opinion, the road was safe and not hazardous.
¶ 13. Kyle Ehrenreich, a private investigator, drove the length of the road and videotaped his journey. Ehrenreich noted on the videotape that the sign at the beginning of Grand Way Boulevard stated, "Grand Bear 6 Miles Ahead." The next two signs stated "Property Boundary National Forest land behind this sign" and "O.R.V. Closure AreaMotorized Vehicles allowed on graded roads only." Robert Weaver, an employee of Harrison County, testified that there had been no other accidents on Grand Way Boulevard.
¶ 14. The ALJ distinguished Ladner's situation from the facts of Stepney. The supreme court in Stepney awarded benefits to the claimant, who was injured while driving along the sole access road leading into Ingalls Shipyard. In Stepney, the access road was a six-lane highway with two-way traffic and was maintained by a governmental entity. The supreme court found the following facts significant in finding the injury compensable: (1) the access road was the only route in and out of the shipyard; (2) the access road was used primarily by the employees of Ingalls or anyone doing business with Ingalls; (3) thousands of Ingalls' employees used this access road during shift changes and lunch breaks; (4) the premises on either side of the road were owned by Ingalls; (5) Ingalls knew the hazardous nature of the road and had placed a sign at the intersection stating "Dangerous Intersection STOP Look Both Ways Before Entering Road"; and (6) the claimant was required to cross the dangerous intersection every day, thus exposing him to a greater hazard than the general public. Stepney, 416 So.2d at 966. In Ladner's situation, the accident occurred over a mile from the gates of Grand Bear, the land on either side of the road is owned by the federal government, there was no history of accidents necessitating a warning sign to those using the roadway, the road was not heavily traveled, and Ladner was not required to cross a dangerous intersection.
*1012 ¶ 15. Ladner also contends that the ALJ failed to specifically address the fourth and sixth exceptions: (1) that Grand Bear furnished a hazardous route and (2) that the accident site was so close to the property that it was actually a part of Grand Bear's property. Ladner argues that Grand Bear Boulevard was nothing more than a long driveway into Grand Bear. It is clear from her findings that the ALJ neither considered this route to be hazardous nor considered it a part of Grand Bear's premises. The All" referred to the accident site as "more than a mile from the premises owned by the employer." The ALJ also reiterated the difference between Ladner's situation and the Stepney case, noting that Ingalls' owning all the land surrounding the access road was tantamount to it being on the premises of Ingalls. Ladner further claims that if the ALJ had the benefit of Duke ex rel. Duke v. Parker Hannifin Corp., 925 So.2d 893 (Miss.Ct.App.2005), which was handed down by this Court subsequent to the ALJ's decision, then the ALJ's decision would have been different. In Duke, this Court reversed the decision of the trial court and remanded the case with instructions to determine benefits. We determined that the decedent was on a special mission or errand for her employer at the time of her death; thus, she was excluded from the general "going and coming" rule. The case at bar is distinguishable because Ladner was not on any special mission or errand for his employer; rather, he was merely going to work.
¶ 16. From her order, it is clear that the ALJ found Rash's testimony to be less than persuasive and ultimately found that Grand Way Boulevard was not a true special hazard. The ALJ stated:
In conclusion, this most unfortunate motor vehicle accident occurred before the claimant reached his employer's premises on a road that does not present hazards any more exceptional than any other winding rural road through a forest upon which is recommended a 25 or 15 miles-per-hour speed limit. This accident falls within the "going and coming rule" and is not compensable.
Both the Commission and the trial court affirmed the ALJ's decision. We find substantial evidence to support the findings of the Commission. Accordingly, we find no error and affirm the judgment of the trial court.
¶ 17. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.